THE IOWA RAILROAD LAND CO. v. THE COUNTY OF SAC ET AL.

1. **Equity**: ROAD TAXES: IRREGULARITY IN THEIR RETURN. Equity will not relieve the owner of property from the payment of road taxes, on account of irregularities in the *manner* of their return to the Board of Supervisors.

2. **Taxes**: ADVERTISEMENT OF LAND. When taxes are delinquent upon the whole, or any smaller part, of a section, lying in one contiguous body and belonging to one owner, the treasurer should advertise the whole tract in a single description.

The Iowa Railroad Land Co. v. The County of Sac.

3. ————: HIGHER.RATE THAN PROVIDED BY LAW: BOARD OF SUPER-VISORS. When the Board of Supervisors are satisfied that the requirements of sections 250 and 251 of the Revision have been substantially complied with, and that a majority of votes has been cast in favor of the proposition, they are empowered to levy a tax of a higher rate than that provided by law.

4. **Pleading:** CONCLUSION OF LAW: TAXES. Where a petition alleged that there was no evidence "on file" by which it appeared that due notice and publication had been given of the submission to a vote of the people of a proposition for a special tax, it was *held*, that the allegation should have been respecting the *fact* of the submission, and that the pleading was bad as presenting a conclusion of law.

5. ————: PRACTICE: DEMURRER. The proper remedy, where a pleading contains allegations of evidence or conclusions of law, is a motion to strike, although it may, also, be assailable by demurrer.

6. **Taxes:** CANNOT EXCEED MAXIMUM RATE ESTABLISHED BY STATUTE: MUNICIPAL CORPORATION. Section 3275 of the Revision confers no independent power of taxation, and does not require municipal corporations to levy a judgment tax in excess of the maximum rate of taxation established by statute. COLE, J., *dissenting, infra.*

    1. Section 710 of the Revision was intended to invest the counties with all the authority necessary to raise the revenue, including whatever may be required for the payment of their debts.

    2. The limitations in that section have the same controlling operation which those in a city charter have upon municipal taxation.

    3. One who becomes the creditor of a county is presumed to do so in view of the existing law, and cannot complain if his debt exceed its power of immediate payment.

7. ————: MUST BE AUTHORIZED BY LAW. The power of taxation is conferred by the legislature, and when it also prescribes the method of taxation, that must be pursued.

8. ————: ————. The proposition was submitted to the voters of a county "whether a tax of ten mills above that provided by law shall be levied upon the taxable property of the county, to pay off the ordinary county indebtedness," to be voted upon at the general election in 1871, but it failed to specify the proposed date of the levy or the year to which the taxes were to be applied: *Held*, that an affirmative vote did not confer upon the Board of Supervisors the power to levy the tax.

9. ————: PRACTICE IN THE SUPREME COURT: EFFECT OF CURATIVE ACT. Pending the decision of a cause upon a petition for rehearing, when no judgment had been rendered upon the filing of the first opinion, which declared special judgment taxes illegal, the legislature passed an act (March 18, 1874,) affirming their legality: *Held*, that the legislative act established their validity.

The Iowa Railroad Land Co. v. The County of Sac.

PER COLE, J.

10. **Taxes:** EXTENT OF LEVY: JUDGMENT AGAINST A COUNTY. The Board of Supervisors may levy a tax to pay a judgment against a county, rendered upon warrants issued for ordinary county expenses, when they have already levied the maximum allowed for ordinary county revenue.

11. ———: REV., SEC. 3275, DOES NOT APPLY TO CITIES. Section 3275 of the Revision has no application to cities organized under special charters, and decisions based upon limitations contained therein furnish no ground for denying the power of the Board of Supervisors to levy a tax under that section.

12. ———: POWER OF CITIES TO LEVY. In *Coy v. The City Council of Lyons*, 17 Iowa, 1, and *Coffin v. The City Council of Davenport*, 26 Iowa, 515, the power of cities to levy a judgment tax was sustained, although it was not conferred by the charter in either case.

13. ———: PROVISION FOR PAYMENT OF JUDGMENT DEBT. The prohibition of all other means for the payment of judgment debts, by section 3274 of the Revision, implies that section 3275 was intended to provide an adequate remedy by conferring the power to levy a tax.

14. ———: ———. Where a municipal corporation has the power to contract a debt, it has, by implication, authority to resort to the usual mode of raising revenues, which is taxation.

*Appeals from the Sac District Court.*

TUESDAY, JUNE 30.

THESE suits are instituted for the purpose of enjoining the defendants from selling the lands of plaintiff for alleged delinquent taxes for the years 1870 and 1871, which plaintiff avers are illegal.

In the first case defendants answered, denying the allegations of the petition, and on a trial a decree was rendered for defendants. In the second case the court rendered a decree for defendants on a demurrer to the petition. Plaintiff appeals in each case.

The causes were argued and submitted together. The material facts appear in the opinion.

*Isaac Cook* and *N. M. Hubbard*, for appellant.

*Eli R. Chase* and *Galusha Parsons*, for the appellees.

MILLER, CH. J.—The plaintiff in these suits alleges that it has paid all the taxes legally chargeable and levied upon its property for the years 1870 and 1871, and complains that certain illegal taxes have been levied thereon, and that the treasurer of the county is about to sell the plaintiff's lands for such illegal taxes and costs charged thereon, and asks that such sale may be enjoined.

I.   The first tax complained of as illegal is the road tax for 1870.

The defendant gave in evidence the following extract from the records of the township trustees of one of the townships of the county, viz:

"STATE OF IOWA,
Sac County, April 11, 1870.

Trustees met according to law for the purpose of levying road taxes for the year 1870.   Present, F. A. Cobb, J. Jones, W. V. Lagorgue, Trustees.   On motion, resolved to levy three mills on a dollar.

C. J. DART, *Town Clerk.*"

It was stipulated on the trial, that each of the other townships of the county have similar records of the levying of road taxes by the respective boards of trustees of each of said townships, and the introduction of such records is waived, and the fact admitted, that such records, if produced, would be, in substance, the same as the above.

It is also shown by the evidence that the township clerks of the different townships sent up certified lists to the treasurer, showing that the road taxes levied upon the lands of plaintiff for the year 1870, had not been paid, and that these lists have been lost.   Parol evidence was admitted, after showing the loss of the certified lists, by which it was made to appear that the lists sent up did not show the amount of road taxes levied against particular tracts of land, but stated that the road taxes had not been paid on the lands mentioned in the lists, without stating any amounts of taxes; that the lists, in some instances, described whole townships in one descrip-

tion, and in other instances several sections were stated to be delinquent.

It is further shown that in making the tax book for 1870, the road tax was carried out thereon as a part of the consolidated tax at the time the book was made out.

These road taxes were legally and properly levied. There is no claim or pretense that they have ever been paid by the plaintiff. The grounds of complaint are mere irregularities in the *manner* of certifying the delinquent road taxes to the proper county officer, and irregularities in the mode of placing them upon the tax books. This question, under a similar state of facts, came before us and was considered in *The Cedar Rapids & Mo. R. R. Co. et al. v. Carroll County*, (*post*), and it was there held that a court of equity will not relieve the plaintiff from the payment of proper and just road taxes against its property, on account of irregularities in the *manner* of returning the same by the township clerk to the clerk of the Board of Supervisors. The record in this case shows a legal levy of the road taxes. The resolution adopted by the trustees constituted the fact of levying the tax. The only matters of complaint relate to the *manner* of transferring and placing this tax on the county treasurer's books. That there were irregularities in doing this is clear, but under the rule above stated, these irregularities will not relieve the plaintiff from the payment of the taxes legally levied and justly due upon its property.

*1. EQUITY: road taxes: irregularity in their returns.*

II. The record shows that the treasurer, in advertising the lands of plaintiff for sale for taxes delinquent thereon, has done so by descriptions containing the smallest legal subdivision of land in each description. By this method of advertising, the cost thereof is shown to be very much greater than it would have been if the largest quantity of land practicable had been included in a single description. Of this plaintiff complains. In the case above cited it was held that it is the duty of the treasurer to so advertise lands for sale for delinquent taxes, as to incur as little costs as are reasonably practicable, consistently with a due and legal advertisement under the law; and that the spirit of

*2. TAXES: advertisement of land.*

The Iowa Railroad Land Co. v. The County of Sac.

the statute requires that when taxes are due and delinquent upon a whole or any smaller part of a section of land in one contiguous body, belonging to the same owner, the treasurer is not authorized to advertise the lands in the smallest subdivisions, but must advertise the whole tract in a single description.

III. It appears by the record that, among the taxes for which the treasurer has advertised plaintiff's lands for sale, is a tax of ten mills on the dollar upon the assessment of 1871, for the purpose of paying off the ordinary county indebtedness. This tax appellant claims is illegal. The question arises only in the second case which was decided on a demurrer to the petition.

The Minute Book of the Board of Supervisors, under date of September 4th, 1871, contains the following:

"WHEREAS, The warrants of the county are at a depreciated value; therefore,

"*Resolved*, By the Board of Supervisors of Sac County, in the State of Iowa, that the question whether a tax of ten (10) mills above that provided by law, shall be levied upon the taxable property of the county, to pay off the ordinary county indebtedness, shall be submitted to the voters of the several townships of the county at the next general election, to be held on the 10th day of October, 1871.

"The manner of voting shall be, each voting for or against the same shall deposit a 'ballot' on which shall be written or printed, 'For the special tax to pay off the county indebtedness,' or 'Against the special tax to pay off the county indebtedness.' And if a majority of the legal voters of said county, voting for or against said proposition, vote for said proposition, then said tax shall be levied as other county taxes, and collected in like manner, but not otherwise, and it is ordered that the clerk of this Board make and publish a proclamation of the time of said election, and of the proposition therein contained, to be submitted, etc., as usual, and said vote shall be canvassed and returned at the same time that other votes at said election are canvassed. Approved.

HOWARD PIERCE, Chairman."

It is further shown by an exhibit to plaintiff's petition that on the 17th day of October, 1871, being after the election was over, the board convened and took action as follows: " On motion, whereas, the Board of Supervisors of Sac County did, at the September meeting of this board, submit a proposition to the legal voters of Sac County, submitting the question ' shall a tax of ten mills on the taxable property of Sac County, Iowa, be levied for the year 1871,' to pay ordinary county indebtedness; and whereas, it appears from the canvass of said votes that said proposition was carried at the October election, 1871; therefore,

"*Resolved,* That the County Auditor is hereby authorized and empowered to place the said ten mill tax on the tax books of 1871, and place his warrant on the same, and that the same be collected by the county treasurer as other taxes are."

It is insisted by appellant's counsel that these proceedings conferred no power on the Board of Supervisors to levy this special tax upon the assessment for 1871.

Section 250, of the Revision of 1860, provides that " when the warrants of a county are at a depreciated value," the Board of Supervisors may submit to the people of a county at a general election or a special one called for that purpose, " the question whether a tax of a higher rate than that provided by law shall be levied. "

3.——: higher rate than provided by law: board of supervisors.

Section 251 provides: " The mode of submitting such questions to the people shall be the following: the whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its *taking effect* or *having operation*, if it be of a nature to be set forth * * * is to be published at least four weeks in some newspaper printed in the county. If there be no such newspaper, the publication is to be made by being posted up in at least one of the most public places in each township, &c."

Sections 255 and 312, further provide that the Board of Supervisors, " on being satisfied that the above requirements have been substantially complied with, and that a majority of

the votes cast are in favor of the proposition submitted, shall cause the proposition and the result of the vote to be entered at large in the minute book and a notice of its adoption to be published for the same time and in the same manner as above provided for publishing the preliminary notice; and from the time of entering the result of the vote in relation to borrowing or expending money, and from the completion of the notice of its adoption in the case of a local or police regulation, the vote and entry thereof on the county records shall have the force and effect of an act of the General Assembly."

The effect of these several provisions of the statute, when complied with, is to clothe the Board of Supervisors with powers which it does not otherwise possess by law. The board may be empowered to levy a tax " of a higher rate than that provided by law," "when the warrants of the county are at a depreciated value." In order, therefore, that the board may acquire this power, a substantial compliance with the requirements of the statute must be had. See *Schroder v. Crary*, 11 Iowa, 555.

It is urged that the proposition, as adopted or determined upon by the Board of Supervisors at their September meeting, did not fix or specify for what year the special tax was to be levied if ratified by the votes of the electors of the county, and that therefore the proceedings conferred no power on the board to levy the tax, and especially that no power was conferred to levy the tax for the year 1871, the regular time for levying taxes for that year having past prior to the election. It will be observed, however, that in the record made by the board on the 17th day of October, 1871, it is recited that the proposition submitted to the voters of the county was, "shall a tax of ten mills on the taxable property of Sac county, Iowa, be levied for the year 1871." There is nothing in the record except this recital, to show what the proposition actually submitted was.

The resolution passed by the board in September previous to the election does not name the year in which it was proposed to levy the tax, yet the published proposition may have named it as recited in the record of the board at their Octo-

ber meeting after the election. But it is said by counsel for appellant that there is no proof that any proposition whatever was published. The question as to the legality of this special tax arises on demurrer to the petition in the second case. The averments in respect to the publication of the proposition are as follows: "Your petitioner is informed and believes, and upon such information and belief charges the fact to be that there is nothing *on file* in any office in said county by which it appears that the question submitted and voted upon was ever published, either by publication in a newspaper for four weeks before the said election, or for thirty days by posting notices in five of the most public places in the county, and a copy of said question posted at each place of voting during the day of election, and whether such notices were in fact given, your petitioner is not advised, and cannot state; but alleges that unless they were published and posted as required by section 251 of the Revision of 1860, the said election is void for want of such notices, and asks that the defendant be required to set forth, etc."

The *fact* that the proposition was not published, or due notice thereof given by posting notices as the law requires, is not averred. The averments are merely to the non-existence of the evidence of such *fact*, and of the legal conclusion that if there had, in fact, been no such publication and notice, the election was void. The allegation that the proofs of publication are not on file in any office in the county, tenders an irrelevant issue which, if proved, would not establish the fact that no publication was made, or notice given, for these proofs may have been made and duly filed, and may have been lost or destroyed; hence the *fact* is not confessed by the demurrer. The fact alone should have been pleaded, and not the evidence or conclusions of law. Revision, §§ 2941, 2945, 2947.

4. PLEADING: conclusion of law: taxes.

The pleading fails to allege facts which show that the board had no authority to levy this special tax, and in respect to this tax the demurrer was properly sustained, although a motion to strike out these allegations of

5. ———: practice: demurrer.

evidence and conclusions of law would have been the more appropriate remedy.

IV.   It is alleged and shown by the record that in addition to a county tax of four mills on the dollar levied for 1870 and also for 1871, and other lawful taxes, the Board of Supervisors also levied, for the year 1870, a special judgment tax at the rate of ten mills on the dollar, to be applied in payment of four several judgments against the county, and also a like tax of ten mills on the dollar for 1871, to be applied on the same judgments.   It is averred that these judgments were obtained on the ordinary warrants of the county issued for ordinary county expenses, such as the payment of the salaries of county officers, jurors' fees, the support of the poor and the like, and it is claimed by appellant that four mills on the dollar is the maximum rate of taxation, which the Board of Supervisors was authorized to levy for the ordinary expenses of the county, and for the payment of said judgments, and that, having levied in each year such maximum tax, the board had no power or authority to levy the additional tax of ten mills for the payment of the judgments.

The general question here involved has been several times passed upon by this court.   *Clark, Dodge & Co. v. The City of Davenport*, 14 Iowa, 494, was an action of mandamus to compel the city to levy a specific tax, sufficient to pay off a judgment rendered against it in favor of the plaintiffs.   The city charter provided that " the city council shall have power and authority to levy and collect taxes upon all taxable property, real, personal and mixed within said city, not exceeding one-half of one per centum per annum upon the assessed value thereof."   By an amendment to the charter it was provided, " that whenever there is a deficiency in the ordinary revenue of the city, after payment of the ordinary city expenses, to pay the semi-annual interest on the debt already created, the city council shall levy a specific tax upon the assessment of the current year to pay said interest."   It was set up in the answer that the city council had exhausted its power to levy taxes, under the power granted to the city in these provisions of its charter.   It was claimed by plain-

tiff, however, that under Sec. 3275 of the Revision of 1860, the power was conferred and the duty imposed upon the city council to levy a special tax sufficient to pay off plaintiff's judgment. It was held that the power of the city to levy taxes was restricted, or limited to the rate and amount specified in these provisions of its charter, and that section 3275 of the Revision, did not confer upon the corporation the power to levy taxes, where such power is not otherwise conferred by law.

It is held, also, that a municipal corporation can exercise the power of taxation, only when expressly conferred by the legislature.

Section 3274 of the Revision exempts from execution the public buildings and other public property of civil corporations, and also exempts the property of private citizens from being levied upon to pay a debt of a civil corporation. Section 3275 is as follows: " In case no property is found on which to levy, which is not exempt by the last section, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to the amount of his judgment and costs, in the ordinary evidences of indebtedness issued by that corporation. And if the debtor corporation issues no scrip or evidences of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs."

It was held, in the case referred to, that this last section conferred no independent power upon the city to levy a specific tax to pay off a judgment against it.

In *Coy v. The City Council of Lyons*, 17 Iowa, 1, also a proceeding by mandamus to compel the levy of a special tax to pay a judgment against the city, the same doctrine is recognized.

Cole, J., in the opinion, says: " The plaintiff holds his judgment, and has demanded payment and the levy of a tax to satisfy it, and brings his action for mandamus to compel such levy. The defendant shows, in defense, that the city council has no authority to levy exceeding a certain rate per cent, which may not, in one year, satisfy the judgment. The object of the suit is to compel payment, and the defense only shows *an inability under the law* to levy sufficient to

satisfy it in one year, but a clear ability to do it in subsequent years."

*Oswald v. Thedinga*, 17 Iowa, 13, was an action against the Mayor and City Council of Dubuque to make them personally liable for a refusal to levy a tax to pay a judgment which the plaintiff recovered against the city, and it is held that the plaintiff having obtained his judgment, it became the duty of the city council under the law, as early as practicable, to levy and collect a tax for its payment, but that it would be a legal excuse for refusing to levy the tax, if the taxing power had been fully exhausted before the demand to do so was made.

*Porter v. Thompson*, 22 Iowa, 391, was a case similar to the one last named, and it was held that the officers were liable, after a demand to levy the taxes, if within their power under the law, and a refusal to comply with such demand. And it was further said in that case that, "if the taxing power was at the time, or for that year exhausted, there would be no liability for the failure. For the statute must be construed in connection with the taxing power of the corporation. It was not intended that a special levy should be made, which, with prior or existing levies, would exceed the maximum rate or per centum fixed in the charter." And it is also said in that case, that should the necessary current expenses of the corporation "absorb the whole taxes which the officers are allowed by law to levy, they would not be bound to comply with the demand. That is to say, if the actual necessary expenses of running the city government required a levy of one per cent (the maximum rate allowed), there would be no liability for refusing to levy more."

In the case of *Coffin v. The City Council of Davenport*, 26 Iowa, 515, the same general doctrine was held and practically applied in the modification of the judgment of the court below.

The principle established by these cases is that section 3275 of the Revision imposes a duty upon the proper officers of a municipal corporation to levy and collect a tax to pay a judgment or judgments rendered against the corporation, only when the power to levy taxes

6. TAXES: cannot exceed statutory rate: municipal corporation.

is elsewhere expressly given by law, and that power has not been exhausted by having levied the maximum rate allowed by the statute; that no independent power of taxation is conferred by that section, but that it can only be exercised in connection with the power of taxation elsewhere conferred by law.

It is claimed, however, by counsel for appellees, that all these cases arose under acts or charters where the power of taxation was limited to a certain specific rate in the aggregate. This is true, and yet it is difficult to see why the principle established by the decisions referred to does not apply equally to a county as to a city corporation, for, by the law conferring the power of taxation upon the Board of Supervisors, the maximum rate they may levy, for the several purposes named, is also fixed. See Section 710, Revision of 1860, which is as follows:

"That the Board of Supervisors of each county in this state shall annually, as hereinafter provided, levy the following taxes upon the assessed value of the taxable property in the county:

1. For state revenue one and one-half (now two and one-half) mills on a dollar, etc.

2. For ordinary county revenue, including the support of the poor, *not more than four mills on a dollar*, and a poll tax of fifty cents.

3.. For support of schools, not less than one nor more than two mills on a dollar.

4. For making and repairing bridges, not more than one mill on the dollar, whenever the Board of Supervisors shall deem it necessary."

It will be observed that the law no where confers upon counties, as such, the power to levy any taxes whatever. The Board of Supervisors have conferred upon it, by the above provisions, the power to levy the state taxes within a certain limitation, as well as the county and school taxes with like limitations. These provisions contain and confer the only power that is given by law to the Board of Supervisors to levy

any county tax for any purpose (except Sec. 250 of the Revision, when the warrants of the county are depreciated.)

The board is authorized to levy for ordinary county revenue, including the support of the poor, *not more than four mills on a dollar*, and a poll tax of fifty cents; also, if they deem it necessary, they may levy a bridge tax of *not more than one mill* on the dollar. This section confers the only authority to levy county taxes, and limits the power therein conferred, just as plainly as a provision in a city charter conferring authority on the corporation to levy taxes not exceeding a fixed rate. But it is said that section 3275 requires, when a judgment is rendered against a county, that a tax shall be levied to pay it, and since section 710 confers authority only to levy taxes for specific purposes, without naming a tax to pay off judgments against the county, the power to do so must be found in section 3275. We think this argument is not tenable, for one of the evident purposes of ordinary county revenue is for the payment of its debts, whether arising upon county warrants or upon judgments obtained on such warrants.

It is manifest that section 710 was intended to confer authority on the Board of Supervisors, to levy all the taxes proper to enable the counties of the State to raise revenue for all needful purposes, and that no further power of taxation was intended to be given by that section, than is therein expressed. If, then, section 3275 gives no independent power of taxation, but only calls that power into exercise when it is elsewhere given by law, then we must look to section 710 for the power to tax; when we do this, we find it there limited, and we can see no solid reason why the limitations contained therein have not the same controlling operation as if contained in a city charter. To our minds there is no difference in principle.

We are aware that the Supreme Court of the United States in *Butz v. The City of Muscatine*, 8 Wallace, 575, construed section 3275 of the Revision to confer an independent power to levy a tax to pay a judgment against the city, which is in direct conflict with the decisions of this court in the cases before cited. That case arose in the Federal Courts, and was

not taken from this court on appeal or writ of error, and there-fore cannot be regarded as overruling the cases on the same question in this court, nor are we prepared to overrule them.

It is further urged that the law confers upon county munici-palities the power to contract debts which may exceed its ability to pay, and at the same time meet the ordinary current expenses of the county government, with a tax of four mills on a dollar on the taxable property within the county; that the revenue of the county thus obtained may all be absorbed in defraying these current expenses, and, in such case, the cred-itor of the county will be practically denied a remedy for the collection of his debt. There is some force in this argument, and yet not as much as would seem on first blush; for when the creditor of the county becomes such, he does so in view of what the law is at the time. He is supposed to know the law, and what are his rights and remedies, under it. But, if the law is defective in this respect, the remedy is with the legisla-ture, and not with the courts.

The Board of Supervisors having levied the maximum rate of tax which the law authorized, it had no authority to levy the additional so called judgment taxes for the years 1870 and 1871. The plaintiff is therefore entitled to a decree enjoining the sale of its lands for such taxes, and for costs of advertising beyond those herein indicated, which decree will be rendered in this court if plaintiff so elects, or the cause will be remanded, for that purpose, to the District Court.

REVERSED.

COLE, J., *dissenting.*—I do not concur in the holding upon the fourth point of the foregoing opinion. It is held there 10. TAXES: extent of levy: judgment against a county. that the Board of Supervisors have no power to levy a tax to pay a judgment against the county, where they have already levied the maximum allowed for ordinary county revenue—the judgment having been rendered upon warrants issued for ordinary county expenses. In my opinion, they have the power to levy a tax to pay such judgment, and if they fail to do so, they may, at the suit of the judgment plaintiff, be compelled to do it by

mandamus. Regretting this, as I always do every difference of opinion with my brothers, I proceed to state, with great deference to their views, the grounds upon which I rest my opinion.

Our statute, under the title "Revenue," enacts: "Sec. 710. That the Board of Supervisors of each county in this State shall annually, as hereinafter provided, levy the following taxes upon the assessed value of the taxable property in the county: 1. For State revenue, one and one-half mills on a dollar. * * * 2. For ordinary county revenue, including the support of the poor, not more than four mills on a dollar. 3. For support of schools, not less than one nor more than three mills on a dollar. 4. For making and repairing bridges, not more than three mills on the dollar, (as amended Sec. 1, Ch. 87, Laws 1866)." And under the title "Executions," our statute also enacts: "Sec. 3274. Public buildings owned by the State, or any county, city, school district, or other civil corporation, * * * * * are exempt from execution. The property of a private citizen can in no case be levied upon to pay the debt of a civil corporation. Sec. 3275. In case no property is found on which to levy, which is not exempted by the last section, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to the amount of his judgment and costs, in the ordinary evidences of indebtedness issued by that corporation. And if the debtor corporation issues no scrip or evidences of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs."

It was held by this court in *Clark, Dodge & Co. v. The City of Davenport*, 14 Iowa, 494, that this section of our statute last quoted conferred no power or authority upon the officers of the defendant, the city of Davenport, to levy any tax; and that, having already levied a tax of one-half of one per cent. (the maximum of their power under the city charter,) they could not be required by mandamus to levy any further tax to pay a judgment. The doctrine of this case has been recognized or followed in the following cases also: *Coy v. The City Council of Lyons*, 17 Iowa, 1; *Oswald v. Thedinga*,

Id., 13; *Porter v. Thompson*, 22 Iowa, 391; *Coffin v. The City Council of Davenport*, 26 Iowa, 515, and incidentally in other cases. The charter of the defendant, in the case first above cited, gave power and authority to levy taxes, etc., "not exceeding one-half of one per cent. per annum upon the assessed value," etc.; and in the case next cited, "not exceeding ten mills per cent."

All these cases related to cities organized under special charters, and not under our general municipal incorporation act.

Now, if the powers of the Board of Supervisors respecting the levy of taxes is not other and different from the powers of the several city councils, in the cases cited, then those cases become conclusive upon us, and would lead us inevitably to negative the power to levy the tax.

But, the learned judge who prepared the opinion of the court in the first and leading case above cited, proceeds to show that § 3275 does not apply to the defendant in that case, or to any city organized under a special charter. He says: "This section is found in the Code of 1851, in a general statute relating to executions. It applies to all corporations as organized under the general statutes passed at the same time this provision was. This law was passed, however, when there was a constitutional provision in force, which prohibited the creation of corporations, by special legislation, except for political and municipal purposes. It was under this constitution that the charter of the defendant was granted. The defendant is a municipal corporation, and was created by a special law, could not constitutionally exist except by special legislation, and if not, no statute, general in its provisions, could apply to it, or regulate or control its process. If this general provision would control the defendant, why the necessity of an amendment to its charter, giving it the power to levy a special tax to meet the interest on bonds issued prior to January, 1855? This section occurs incidentally in the chapter in relation to executions. It does not purport to be an amendment to the charter of defendant; nor does it specially relate to corporations for city purposes, * * *."

If this is the correct view, that section 3275 has no application whatever to the cities organized under special charters, and hence its provisions had no bearing or influ-

*11 ——: Rev. § 3275, does not apply to cities.*

ence in determining the leading case from which we make the quotation, and the other cases cited, then it is clear that those cases do not conclude us nor tend to lead us to deny the power of the Board of Supervisors to levy a tax under said section. Because the right to levy a tax in this case is grounded upon section 3275, which, it was held, as appears from the above quotation, did not apply to those cases. This case, then, is to be decided upon the true interpretation of this statute, and cannot be controlled by those cases, in which that interpretation was not considered.

But suppose, as might be inferred from some of the language used in one or more of the opinions in the cases cited, that the court considered section 3275 as applying to those cases; and concede, for the purpose of the discussion, that it does apply equally to cities under special charters, and under the general law, and to counties.

It will be observed that the charters of the cities referred to limit the power of taxation in the aggregate to the per centum specified. That is to say, those cities might levy taxes for the various legitimate purposes, and at such rate for each purpose, as the proper officers might determine, but all such levies could not in the aggregate exceed the limit prescribed. And hence, if the limit had been reached, no further levy could be made, even for the purpose of paying a judgment. But as respects the Board of Supervisors, there is no limit fixed for the aggregate of the levies of taxes they may make, but a limit prescribed to the tax for each purpose, save the one. That is to say, they must levy annually, *first*, for State revenue not exceeding two mills; *second*, for ordinary county revenue, etc., not more than four mills; *third*, for support of schools not more than two mills; *fourth*, for making and repairing bridges not more than three mills on the dollar, (Rev., Sec. 710, and Sec. 1, Ch. 87, of Laws 1866); and, then, also a tax sufficient to pay off any judgment with interest and costs. (Sec. 3275). Thus it will be seen that while there is a

limit fixed to four of the five items for which the Board of Supervisors may levy taxes, there is no limit prescribed for the fifth and last item, except that it shall be *sufficient to pay off the judgment, interest and costs*. The first four they *must* levy *annually;* the last, whenever a judgment is rendered against the county, requiring it. These statutes, (Secs. 710 and 3275 are *in pari materia*, and are to be thus construed together; and being so construed, it is manifest that the Board of Supervisors are clothed with the power to levy the tax sufficient to pay off the judgments, although they may have levied taxes for the other purposes to the extent of the maximum of their authority.

Nor is there, to our mind, any force or validity in the argument, that since the judgments were rendered upon warrants issued for the one or the other of the two purposes, ordinary revenue or bridges, and the maximum tax for those had been levied, therefore no tax could be levied to pay off such judgments. It is enough that they *are judgments*, for thereby is created the necessity for the exercise of the power to levy a tax to pay them, which section 3275 has conferred. If the warrants upon which the judgments were rendered, were issued wrongfully, or in excess of any authority so to do, this might constitute a defense to the action upon them; (*Clark v. Des Moines*, 19 Iowa, 213, and *Clark v. Polk Co.*, Ib., 248); and, if it had been then interposed, might have defeated the recovery of the judgments. But that stage of the controversy is passed, and the judgments are now verities, and absolutely conclusive that the warrants were valid and properly issued; and that the county justly owes the amount. *The State ex rel. v. Beloit*, 20 Wis., 79; *The Mayor v. Lord*, 9 Wall., 409; *Supervisors etc. v. United States*, 4 Wall., 435.

And while we are upon the subject of the previous decisions of this court, it may be well to refer more particularly to the cases cited *supra*, of *Coy v. The City Council of Lyons*, 17 Iowa, 1, and *Coffin v. The City Council of Davenport*, 26 Iowa, 515. In each of those cases it was expressly *held* that the respective city councils had the power and authority to levy and collect a tax to pay a judgment, and

12. ——: power of cities to levy.

The Iowa Railroad Land Co v. The County of Sac.

they were severally required by the order and mandate of this court to.do so, although there was no pretense or claim made that the power to so levy or collect was expressly given by the charter in either case. And it also appears to me that those decisions very clearly negative the idea contained in the foregoing majority opinion that "one of the evident purposes of ordinary revenue is for the payment of debts;" because they hold that the ordinary revenue cannot be taken to satisfy judgments, but may be held and kept in the treasury for the purpose of paying the ordinary expenses; and the judgment creditor has no right thereto as against such uses. See also *Grant et al. v. The City of Davenport*, 36 Iowa, 396.

But further than this, it will be remembered that, under the principles of the common law, and in the manner prescribed by statute, an execution might be issued against the corporation judgment debtor, and its property sold thereunder; and in case there was no property of the corporation found upon which to levy, it was lawful to levy upon and sell the property of the corporators. This is the rule in the New England States, up to the present time. Dillon on Mun. Corp., 641, and note. And, it is manifest that our statute, Sec. 3274, above quoted, was enacted to expressly prohibit such a course. And it is also apparent that Sec. 3275 was enacted to provide an equally efficacious means for enforcing the payment of judgments. Without either section, the common law, or New England method of enforcing payment of judgments, might have obtained; and in such case perhaps no power to levy a tax would have been implied. But that method was prohibited by Sec. 3274, and its equivalent, the power to levy a tax to pay the judgment was enacted in its stead. How it can be said, in view of the previous law and of this legislation, that Sec. 3275, "gives no independent power of taxation," as respects the counties, is, to me, a marvel. That it gives no independent authority to a *city* to levy a tax *beyond.the aggregate limits of its power*, when the power to levy is *expressly limited* by the charter of the city itself, is quite another question.

And there is still another view, having the support of many adjudications in several different States, as well as of the Federal courts, and which is grounded upon very plain principles of common honesty and fair dealing, and which, in the absence of any limit upon their aggregate power of taxation, fully sustains the power of the Board of Supervisors to levy the tax to pay the judgments, as they have done in this case. It is fairly stated by THOMPSON, J., in delivering the opinion of the court in the *Commonwealth ex rel. Armstrong v. Comm'rs of Allegheny,* 37 Pa. St., 277, as follows: "Nor do we think that the succeeding plea, (want of power to levy a tax,) is sustained. The act of 1843 authorized subscriptions by certain counties to be made as "fully as any individual could do," without prescribing more precisely the terms. But by the fifth section of the act of April 18, 1843, counties subscribing are authorized to borrow money to pay for such subscriptions. We have decided that bonds or certificates of loan issued by a municipal corporation, is an ordinary and appropriate mode of borrowing money, and the act of 1853 expressly authorized the issue of such securities. The subscriptions (to the stock of the railroad), were accordingly made, and the bonds issued. Thus was a lawful debt incurred by the county, and *as no other mode of extinguishing it,* or of paying the interest thereon, *was provided, it follows of course,* that the ordinary mode of raising the means must be resorted to, namely, to provide for it in the annual assessment of taxes for county purposes," (see page 284); and in the same opinion it is further said: "In the next place it is averred that there is no authority to levy a tax for the payment of the interest by the county. We have already treated of this, and said that the authority to create the debt implies an obligation to pay it; and where no special mode of doing so is provided, it is also implied that it is to be done in the ordinary way—by the levy and collection of taxes. This plea is insufficient." (See page 290.) The same court has repeatedly decided the same point in the same way. *Commonwealth ex rel. Armstrong v. Perkins,* 43 Pa. St., 400; *Commonwealth*

*ex rel., etc., v. Allegheny*, 32 Pa. St., 218; *Commonwealth ex rel., etc., v. Pittsburg*, 34 Pa. St., 496, etc.

In the case of *The State ex rel. Hasbrouck v. The City of Milwaukee*, 25 Wis., 122, COLE, J., in delivering the opinion of the court, says, on page 133: "Still this general proposition may be maintainable upon the authorities that, where a municipal corporation has the *power to contract* the debt, it has, by *necessary implication*, authority to resort to the usual mode of raising money to pay it, which, undoubtedly, is taxation." And in the same case DIXON, CH. J., says, on page 142: "But if I had not this plain ground to stand upon, namely, the power of taxation expressly given by the statutes authorizing the city to contract the debt, I should still hesitate long before holding that the creditor by judgment in such case had no remedy for its collection. I can hardly conceive it possible that such a state of things can exist under the constitution of this State, as I have had reason to observe on several occasions heretofore. *Phelps v. Rooney*, 12 Wis., 698; *Soutter v. Madison*, 15 Wis., 37; *Bull v. Conroe*, 13 Wis., 237. The raising of money by taxation being the usual, and, I may say, the only means by which the payment of such debts can be made or enforced, the power to tax in the ordinary methods, if not expressly given would, as it seems to me, be most clearly and necessarily implied from the power to contract the debt itself, and would run with the debt, creating a continuous and irrepealable obligation and duty to exercise it so long as the debt, or any part of it, remained unpaid. Such appears to be the doctrine of the Pennsylvania decisions upon this point, and it appears to me sound, wholesome and just." See also, *Crane v. The City of Fond du Lac*, 16 Wis., 196. To the same effect are the cases of *The People ex rel., &c., v. San Francisco*, 21 Cal., 668, and cases cited; also, *The City of Chicago v. Halsey*, 25 Ills., 595; *Olney v. Harvey*, 50 Ills., 453; *Schaffer v. Cadwallader*, 36 Pa. St., 126. The same doctrine is also held in other States, and in the Federal Court, see *Butz v. Muscatine*, 8th Wall., 575, and cases there cited.

This opinion is already too extended, and may best be concluded by a recapitulation of the grounds of my dissent,

namely: 1st. Our court has never decided that section 3275 gave no power to the Board of Supervisors of a county to levy a tax to pay a judgment. 2d. We have held, in at least two cases, that cities have power to levy a tax (and it must arise under that section,) to pay judgments against them. 3d. The section 3274 repeals all other means of paying judgments, and it is, from its immediate connection, very manifest that section 3275 was enacted to provide an equally adequate remedy to pay judgments by conferring the power to levy a tax therefor. 4th. If no power was given thereby, then, since the judgment is a debt, and the power to contract it was conclusively established by the rendition of the judgment itself, it, the power to contract, carries with it in the absence of any limitation upon the power of taxation, the implied and necessary power to pay it in the only manner it can be paid, to-wit: by the levy of a tax. 5th. The plainest principles of honesty and justice demand that such judgment creditors shall, like all other creditors, have the right to enforce payment. That right had better be justly, fully and manfully granted them in the domestic tribunals, than, by denying it, drive them to the federal courts where, upon *stare decisis* alone, they are sure of the relief we deny them.

OPINION ON REHEARING.

MILLER, CH. J.—After the filing of the foregoing opinions, and within the time allowed by law and the rules of court, the plaintiff filed a petition for a rehearing upon the questions relating to the special county tax of ten mills on the dollar of valuation, levied for the purpose of paying county indebtedness. The usual order granting a re-hearing was made, the question re-argued and submitted at the April term, 1874, at Dubuque.

By section 250 of the Revision the Board of Supervisors were authorized, when the warrants of the county were at a depreciated value, to submit the question to the people of the county, at a regular or special election, "whether a tax of a higher rate than that provided by law shall be levied." The

same section also authorized the submission of the questions whether money may be borrowed, whether stock shall be prohibited from running at large, etc.

The next section (251) provided that the mode of submitting such questions to the people shall be the following: " The whole question, including the sum desired to be raised or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its taking effect or having operation, if it be of a nature to be set forth, and the penalty for its violation, if there be one, is to be published at least four weeks in some newspaper printed in the county. If there be no such newspaper, the publication is to be made by being posted up in one of the most public places in each township in the county, and in all such cases in at least five among the most public places in the county including the above, and one of them in all cases at the door of the court house, during at least thirty days prior to the time of taking the vote. All such notices shall name the time when such question will be voted upon, and the form in which the question shall be taken, and a copy of the question submitted shall be posted up at each place of voting during the day of the election."

In pursuance of the authority thus given by the statute, the Board of Supervisors of Sac County, on the 4th of September, 1871, adopted the following preamble and resolution:

" WHEREAS, The warrants of the county are at a depreciated value, therefore,

*Resolved*, By the Board of Supervisors of the county of Sac, in the State of Iowa, that the question whether a tax of ten mills above that provided by law shall be levied upon the taxable property of the county to pay off the ordinary county indebtedness, shall be submitted to the voters of the several townships of the county at the next general election, to be held on the 10th day of October, 1871. The manner of voting shall be, each voting for or against the same shall deposit a 'ballot' on which shall be written or printed, ' For the special tax to pay off the ordinary county indebtedness; ' or, ' Against the special tax to pay off the ordinary county indebtedness.' And if a majority of the legal voters of said county, voting for or

against said proposition, vote for said proposition, then said tax shall be levied as other county taxes and collected in like manner, but not otherwise; and it is ordered that the clerk of this board make and publish a proclamation of the time of said election, and of the proposition therein contained, to be submitted, etc., as usual, and said vote shall be canvassed and returned at the same time that other votes at said election are canvassed.                          . Approved.

                     HOWARD PIERCE, Chairman."

The power or authority to levy the tax in question could be obtained only by a compliance with the provisions of the statute. The record does not show what publication was made prior to the election, or whether the proposition resolved to be submitted as above set out was published as the statute requires. But conceding that *a* notice of the submission was. published, we are not authorized to presume that any other or different proposition than the one determined upon by the board was in fact published. There would be no authority for publishing any other. It was only the question or proposition determined upon that could lawfully be submitted to the voters of the county. The resolution adopted by the board contained the only proposition which could be submitted to such vote, and it authorized the clerk to publish a proclamation of the time of the election and of the proposition therein contained to be submitted, and none other. So that we must conclude that the proposition contained in the resolution was the one submitted and voted upon by the people.

The record further shows that on the 17th day of October, 1871, the Board of Supervisors met, canvassed the votes, and declared the proposition carried, and then also adopted the further resolution directing the county auditor "to place the said ten mills tax on the tax books of 1871."

The objection is made that the proposition which the Board of Supervisors adopted and submitted failed to specify the year for or in which the proposed tax should be levied, and that the board had no power to levy it for 1871.

. The Board of Supervisors had no power to levy this tax

unless that power was conferred by the vote of the people of the county in the manner the law provided. *Reichard v. Warren Co.*, 31 Iowa, 381, 388. Section 255 of the Revision provided that the Board of Supervisors, on being satisfied that the requirements of the law in relation to the submission of the question, etc., as contained in the preceding sections, had been substantially complied with, and that a majority of the votes cast were in favor of the proposition submitted, should cause the proposition and the result of the vote to be entered of record, and a notice of its adoption to be published in the same manner as the preliminary notice, " and from the time of entering the result of the vote, &ast; &ast; &ast; the vote and the entry thereof on the county records shall have the force and effect of an act of the General Assembly." As provided in this section, it is only through a substantial compliance with the requirements of the law, and the affirmative vote of the people of the county, that the power to levy the tax in question could be obtained. It is well settled that no prop-

7. ——: must be authorized by law. erty can lawfully be taxed until the legislature authorizes and requires it to be done, and when the law requires it to be done in a particular way, that way alone can be pursued. *The City of Davenport v. The M. & M. R. R. Co.* 12 Iowa, 545. So where a power is conferred by law, and the manner of its exercise is also prescribed, the power can be exercised only in the prescribed mode. *Bank of Augusta v. Earle*, 13 Pet., 585; *Zottman v. San Francisco*, 20 Cal., 96; *Hull & Argalls v. Marshall Co.*, 12 Iowa, 154.

In section 251, of the revision, above set out, the mode of submitting the question to the people for their vote thereon, s. ——: ——: is specified. Among other requirements are the following: " the whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, *including the time of its taking effect or having operation, if it be of a nature to be set forth.*" In the submission of the question in this case, the time when the tax should be levied, or the year in which it should be levied, was entirely omitted from the sub-

mission. It was certainly " of a nature to be set forth" in the proposition, and being so, it was required by the statute to be done. It was one of the requirements of the law which it was necessary should be complied with in order to confer upon the board the power to levy the tax. The statute says this *shall* be done. It also says the amount of tax to be levied or the rate per annum, must be stated in the proposition. Suppose this latter statement had also been omitted, most clearly there would have been a fatal non-compliance with the statute. If this be so, then the omission of either of these statements would be fatal, for if one may be omitted, both may; and if the omission of both would be fatal, the omission of either would be also. One is as much necessary to be stated as the other, or as both. They are each necessary, because the statute has required them to be set forth; and it is only by a compliance with the statute that the power to levy the tax proposed can be derived. There being this omission, from the proposition submitted, of an essential requirement of the statute, the vote of the people adopting the proposition could not confer power on the Board of Supervisors to levy the proposed tax.

II. On the 18th of March, 1874, the General Assembly passed an act curing and making legal and valid the taxes which, in the majority opinion above were held to be invalid. This act was passed after the rehearing in this case had been granted, and prior to the submission thereof on rehearing. Counsel on both sides have submitted arguments upon the general effect of that act, and also as to its effect upon this case. In respect to the general legal operation of that act, our views and conclusions may be found in *The Iowa Railroad Land Company v. Soper et al.*, 112 *ante*.

9. ———: practice in the Supreme Court: effect of curative act.

As to the effect of the act upon this case, we are of opinion that, since no judgment was rendered herein upon the filing of the majority opinion, and a rehearing having been granted and the cause being pending thereon when the act took effect, the case must be regarded precisely as if no opinion had been previously filed therein, and that it is our duty to apply the

law to the case as we now find it to be. Thus holding, and following *The Iowa Railroad Land Co. v. Soper et al., supra,* we hold that the judgment taxes involved in the case are rendered valid and collectible by the curative act above referred to. We are of opinion, however, that the penalties imposed by law for the non-payment of taxes after the same become due and payable, should not be computed upon these judgment taxes prior to April, 1874, the first month after the taking effect of the act legalizing such taxes. Since we base our opinion of the liability of the plaintiffs to pay these taxes solely upon the act declaring them to be legal and collectible, no penalties could lawfully attach for the non-payment of the taxes prior to the taking effect of that act, unless otherwise declared therein. That act took effect March 20th, 1874.

On the other questions discussed and determined. in the majority opinion heretofore filed herein, and not re-examined in this opinion, we are content to adhere thereto. That opinion, as herein modified, will be re-filed herewith.

The costs of this court and those of the court below will be taxed in equal portions against both parties. Judgment may be rendered in this court if either party moves therefor, otherwise the cause will be remanded to the District Court with directions to render judgment not inconsistent with the opinions herein.

