JEFFRIES ET AL. v. LAWRENCE ET AL.

1. **Municipal Corporations**: POWER TO ISSUE BONDS: TAXATION. Where a city was authorized by its charter to subscribe to the stock of a railway company, if so empowered by vote of its people, and to issue its bonds in payment of the same, and, after a subscription thus authorized had been made, the legislature enacted a general law prohibiting all cities in the State from taking stock in corporations or issuing bonds therefor: *Held*, that the city charter must yield to the general law, and that no tax could be levied for the payment of the bonds issued after the general law came into effect.

2. ——: ——: ——. That the subscription was made before the enactment of the general law would not by implication confer authority to contravene its provisions by the issuance of the bonds.

3. ——: ——: PRESUMPTION. The bonds having been issued after the prohibitive statute was passed, the presumption will be indulged that the subscription was a cotemporaneous act and made afterward also, unless the contrary be shown by affirmative proof.

4. ——: ——: BURDEN OF PROOF. The burden of proof is upon the party alleging the validity of the bonds to show that the subscription was made before the statute took effect.

5. ——: TAXATION. A municipal corporation cannot levy a tax in the absence of delegated authority from the State and the power to contract indebtedness does not by implication confer authority to levy taxes for the payment of the debt.

6. ——: ——: LIMIT. It cannot levy a tax, in excess of the statutory limit of its power, to pay a debt contracted after such limit was fixed.

*Appeal from Pottawattamie District Court.*

FRIDAY, MARCH 24.

ACTION in chancery to enjoin the collection of certain taxes levied by the common council of the city of Council Bluffs. The defendants are the mayor and members of the city council and the treasurer of the county. The plaintiffs are the owners of certain real estate in the city of Council Bluffs, which is subject to the taxes in question. The District Court by decree granted the relief prayed for in plaintiffs' petition. Defendants appeal.

*Montgomery & Scott* and *G. A. Holmes*, for appellants.

That a statute was designed to be retrospective in its operation will not be implied when it does not relate to subjects which would render such a construction necessary from considerations of public necessity. (*Barmuff v. Remey*, 15 Iowa, 257; *State v. Squires*, 26 Id., 3.) The bonds having been issued by the city, in settlement of the subscription of stock, the disposition made of them cannot affect their validity or the city's obligation to pay them. (*Com'rs of Knox Co. v. Aspinwall*, 21 How., 539; *Gelpcke v. Dubuque*, 1 Wall., 203; *Moran v. Miami Co.*, 2 Black., 722.) The validity of the act under which the bonds were issued has been recognized. (*Stewart v. Supervisors*, 30 Iowa, 9; *M. & S. C. R. Co. v. Birdsall*, 30 Id., 255.) If there be authority for the issue of bonds, the omission of formalities or fraud of the agents of the municipality issuing them cannot be urged against the validity of the bonds in the hands of a *bona fide* holder. (*Com'rs of Knox Co. v. Aspinwall, supra; Mercer v. Hackett*, 6 Wall., 83; *Meyer v. Muscatine*, 1 Id., 384.)

*James, Aylesworth & Mynster* and *B. W. Hight*, for appellees.

The State having no right to become a stockholder in any corporation, it cannot delegate that right to a city. (*The State ex rel., etc. v. County of Wapello*, 13 Iowa, 388; *Myers v. County of Johnson*, 14 Id., 47; *Smith v. Henry County*, 15 Id., 385; *Ten Eyck v. Mayor of Keokuk*, 15 Id., 486; *O'Donnell v. Bailey*, 24 Miss., 386.) After subscription to the capital stock of a railway, and before payment, the legislature has the right to take away the power of issuing bonds in payment. (*People v. Coon*, 25 Cal., 635; *U. P. R. Co. v. Davis Co.*, 6 Kan., 256.) The power to levy taxes for a special purpose must be exercised under authority actually conferred, in express terms or by necessary implication. (2 Dill. on Mun. Corp., § 605; Cooley's Const. Lim., 194–5; *Ham v. Miller*, 20 Iowa, 450; *Clarke v. Davenport*, 14 Id.,

494; *Merriam v. Moody*, 25 Id., 163; *The I. R. L. Co. v. Sac Co.*, 39 Id., 124; *Burns v. Atchison*, 2 Kan., 254; *Leavenworth v. Norton*, 1 Id., 432. When bonds are issued by a city without any legal authority therefor, they derive no validity from the fact that they are in the hands of innocent holders. (Dill. on Mun. Corp., § 426; *Gould v. Sterling*, 23 N. Y., 464.)

BECK, J.—I. The city council of Council Bluffs levied a tax of sixteen mills on the dollar for the year 1871. The purposes of the tax were as follows:

"For general city purposes, four mills.

"For paying interest or principal of fire bonds, two mills.

"For road purposes, three mills.

"For paying interest and principal on $60,000 loan, two mills.

"For paying interest and principal on bonds issued to Council Bluffs & St. Joseph Railroad Company, and bonds issued to Union Pacific Railroad Company, three mills.

"For paying bonds of 1871, one mill."

The taxes levied for "general city purposes" and for "road purposes" have been paid by plaintiffs, and are not in question in this action.

The city was indebted upon certain bonds which, in considering the validity of the tax levied for their payment, may be divided into two classes as follows:

1. Those issued for the payment of a subscription to the capital stock of the Council Bluffs & St. Joseph Railroad Company.

2. Those issued in aid of the construction of the Union Pacific Railroad, the amount being expended within the city in payment for the right of way, etc.; and others for the purchase of a fire engine and other purposes, including the objects of the indebtedness specified above as the "$60,000 loan" and the "bonds of 1871."

The validity of the taxes in question may be considered in reference to this classification of their respective purposes, as we shall find different rules of law determine the legality of

the taxes included in each class. We will consider them in our inquiry into their validity, in the order of the classification we have adopted.

II. Our attention is first called to the tax levied to discharge the principal and interest of the bonds issued in payment of stock subscribed to the Council Bluffs and St. Joseph Railroad Company. The facts connected with the indebtedness of the city upon the bonds may be briefly stated. They were issued on and after May 19th, 1860, in pursuance of a vote by the people had December 10, 1859, under an ordinance of the city adopted November 14, 1859, which provides for the subscription to the capital stock of the railroad company just mentioned, upon a vote of the electors of the city. No question need be considered touching the regularity of the ordinance, or of the election held thereunder. We will first inquire into the validity of these bonds—whether they were issued by the city in the exercise of lawful authority. The statute of the State involved in the question must be first stated.

Section 15 of the amended charter of the city of Council Bluffs is in the following language:

"The said city shall have power to subscribe to the capital stock of any railroad company, and pay the same with the bonds of the city; and shall be empowered and required to levy and collect all the necessary taxes to pay the principal and interest of said bonds: *Provided*, such subscription shall be authorized by a majority vote of the legal voters of said city, cast at an election ordered for that purpose." Acts Sixth General Assembly, chapter 102.

The bonds in question, leaving out of view the question of their constitutionality, are valid if they are unaffected by subsequent legislation. Our next inquiry must be directed to this point.

Chapter 84, Acts Eighth General Assembly (Revision, chapter 55, Art. 8, page 223), is in these words:

"1. No county, incorporated city, or town, in this State shall, in their corporate capacity, or by their officers, directly or indirectly, subscribe for stock or become interested as a

partner, shareholder or otherwise, in any banking institution, whether the same be a bank of issue, deposit or exchange, nor in any plank road, turnpike or railroad, or any other work of internal improvement, nor shall they be allowed to issue any bonds, bills of credit, scrip or other evidences of indebtedness for any such purpose—all such evidences of indebtedness for such purposes being hereby declared absolutely void."    *    *    *    *

"2.   All bonds, or other evidences of debt hereafter issued by any corporation to any railroad company as capital stock shall be null and void, and no assignment of the same shall give them validity.

"3.   All laws contravening the provisions of this act be and the same are hereby repealed."   The act took effect May 2, 1860.

The obvious purpose of this chapter, which is general in its nature, is to take away from all cities possessing it the power

1. MUNICIPAL corporations: power to issue bonds: taxation.

to contract the indebtedness and issue the securities therein forbidden.   The language is plain and unmistakable, and such a purpose is not merely discovered by construction, or revealed by interpretation —it is unmistakably disclosed, and cannot be concealed by any interpretation sanctioned by the law.   This purpose, too, is taught by the legislative history of the act.   Such being the case, the city charter must yield to the general law, a doctrine, I believe, nowhere denied.   Dillon's Municipal Corporations, section 54.

It will be remembered that the bonds in question were issued subsequent to the taking effect of the statute.   Unless

2. ——: ——:
  ——:

taken beyond its operation by other matters not mentioned, they are void, being executed without authority and in direct contravention of law.   But it is claimed that the subscription of the city to the stock of the railroad company was made before the law took effect.   It is upon this ground insisted that the subscription, having been made while the city was clothed with proper authority, was valid, and, therefore, the bonds are legal.   But this conclusion is a *non sequitur*.   The validity of the sub-

scription as a contract by no means would validate a contract of another character, which the city not only had no power to make, but was forbidden to enter into by law. The subscription may have created a liability on the part of the city, but that liability cannot be construed into authority to issue securities forbidden by the statutes of the State. The express provisions of the statute cannot be defeated by implication arising from the authority of the city to subscribe for stock. Surely, in case the charter of the city should confer authority to subscribe for stock in a railroad company, and another provision of its charter should absolutely forbid it issuing bonds in payment of such subscription, no one would claim that the power conferred would abrogate the prohibition against issuing the securities. Yet the case is not different from the one before us.

III. We think another view of the case based upon a fact not before stated is equally conclusive against the validity of

3. ——: ——: the bonds. It is not shown that the subscription
presumption. was made prior to the taking effect of the prohibitory statute; the bonds were issued afterward, and the action of the city—the ordinance and vote under which the subscription was made—was before. We cannot presume that, because the city acquired authority by the vote of the electors, its officers executed, at any time, the power conferred by the vote. The possession of power can raise no presumption of its exercise. We know of no rule of law that requires us to presume the execution of the subscription because of the vote and ordinance of the city, empowering the mayor to make the subscription.

On the other hand, in our opinion, the presumption must be exercised that the subscription and the issuing of the first bonds paid thereon were simultaneous. The city become bound to pay for the stock upon subscription in such installments as the terms of the contract provided. We are required to presume the payment was made when the liability was incurred, and neither before nor afterwards.

In another aspect of the case, we think, under the issue upon this point, and the rules of evidence, we are required to

find that the bonds in question are invalid. Plaintiffs aver

4. ——: ——: the illegality of the bonds and an issue thereon
burden of
proof.       is joined. By showing that they were issued after
the statute above quoted they must be regarded as invalid
in the absence of other proof. A *prima facie* case is thus
made in favor of plaintiffs on this issue. It rested with defend-
ants to overcome it. As we have shown, no presumption will
arise that the bonds were issued before the law took effect.
The defendants failing to show that the subscription was made
before the statute took effect, we are required to hold the bonds
invalid.

We do not pass upon the question made in the case involv-
ing the want of power in the legislature, under the constitu-
tion of the State, to confer authority upon the city to contract
indebtedness of the character of the bonds in question. This
constitutional question we find it unnecessary to determine,
or to inquire whether it has been determined by prior decis-
ions of this court.

IV. We come now to the consideration of the taxes levied
for the payment of the bonds, included in the second class as
we have above presented them. We are not required to enter
into an examination of the validity of these obligations, but
simply to determine whether the city is authorized to levy the
taxes sought to be enjoined for their payment.

The bonds were issued to the U. P. R. Co., in 1871. The
"fire bonds" were issued in 1868; those for the "$60,000
loan" in 1866, and the other bonds in 1871. The amended
charter of the city before referred to, section 16, provides that,
"the city council shall have power and authority to levy and
collect taxes upon all taxable property, real, personal and mixed,
within the city, subject to taxation for county purposes, includ-
ing money at interest or on deposit, not exceeding five mills on
the dollar, in any one year." Section 18 further empowers
the city as follows: "If at any time it shall be deemed neces-
sary to increase the rates of taxation provided for in the pre-
ceding section, the city council shall call a meeting of the
taxable inhabitants of said city, by giving two weeks' notice
thereof in the newspapers published in said city, and by post-

ing two notices in each of the wards thereof. At such meeting * * * * * * * * the taxable inhabitants then present shall have power, by a majority vote, to increase the rates of taxation for the current year, to such amount as they may determine, not exceeding one per centum upon the whole amount of taxable property." It is not claimed that authority was acquired by the city to increase the taxes under this section.

It will be remembered that this amended charter was enacted in 1857, and it is important to remark that the indebtedness, for which the bonds now under consideration were issued, was contracted subsequently thereto.

The doctrine everywhere prevails that no taxes can be levied by municipal corporations, in the absence of authority conferred by the State, if not in terms, yet by plain and unmistakable implication. The authority to contract indebtedness by the corporation will not confer power to levy taxes in payment thereof, unless such clearly appears to have been the intention of the legislature. The creditor of the city, when contracting with it, must look to its authority to levy taxes, which, as it were, pertains to his remedy and enters into the contract. When judgments are recovered against a corporation in this State, this court has held that a statute requiring such corporation to levy a tax, " as early as practicable to pay off the judgment with interest and costs" (Rev., § 3275, Code, § 3049), confers no authority to levy taxes beyond the amount prescribed by the terms of the statute, conferring the taxing powers. *Iowa Railroad Land Co. v. The County of Sac,* 39 Iowa, 124, and authorities cited. *Supervisors v. United States,* 18 Wal., 71; Dillon's Municipal Corporations, §§ 605, 606, and authorities cited.

5. ——: ——: *taxation.*

The original charter of the city of Council Bluffs, § 43 (Acts Fourth General Assembly, Chap., 64), authorizes the city to borrow money at its discretion upon a two-thirds vote of the electors. There is nothing in this section, or to be found elsewhere in the original or amended charter, which raises an implication that the power to tax is unlimited. Indeed it appears, by the amended char-

6. ——: ——: *limit.*

ter (Acts Sixth General Assembly, Chap., 102), that the implication sought to be drawn from the other section just cited, to the effect that the power is co-extensive with the authority to contract indebtedness, is clearly negative. The city is authorized to issue bonds in payment for the stock of railroads, but the same section authorizes the levy of taxes for the payment of such bonds. Amended Charter, § 15. Here is found authority for the levy of taxes beyond the limit prescribed in the very next section. It is very plain that the legislature did not intend this limit to be exceeded in any case except under express provisions.

It is our opinion that the city does not possess authority to levy taxes in excess of the restriction prescribed in the amended charter.

The foregoing discussion leads us to the conclusion that the taxes complained of in plaintiff's petition are illegal and ought not, therefore, to be collected. The decree of the District Court is, therefore,

AFFIRMED.