THE S. C. & ST. P. R. CO. v. THE COUNTY OF OSCEOLA ET AL.

1. **Judgment Bonds:** INNOCENT HOLDERS: NEGOTIABLE PAPER. The judgment bonds of a county in the hands of innocent holders for value, without notice of their illegality for any cause, cannot be defeated by showing that the judgments were rendered upon warrants issued in excess of the constitutional limitation of five per cent, and that the board of supervisors fraudulently omitted to interpose the defense when the warrants were sued upon. BECK, J., *dissenting*.

2. **Taxation:** ASSESSMENTS: RAILROADS. A road tax against a railroad company is not defeated by the fact that the assessment of the property is not placed upon the assessment book of the township. The order of the board of supervisors, declaring the length of the main track and assessed value of the road lying within the township, transmitted to the trustees, becomes the basis for the levy of taxes upon railroad property.

3. ——: IRREGULARITIES. Mere irregularities in the levy of the tax will not defeat its collection.

4. ———: ———: ROAD TAX. That the taxpayer has not been notified to work out that part of the road tax which might be paid in work will not authorize the restraining of the collection of the entire tax.

### *Appeal from Osceola Circuit Court.*

### TUESDAY, DECEMBER 12.

THE plaintiff's petition in substance alleges:

1. That plaintiff is a duly organized corporation.

2. That defendant is a duly organized political corporation.

3. That the Executive Council of the State of Iowa assessed plaintiff's property for the year 1873, the total valuation in Osceola county being $44,750.

4. That at the regular meeting in September, 1873, the board of supervisors of Osceola county levied taxes upon the property of the county, including a tax of fifteen mills on the dollar for payment of principal and interest on judgment bonds.

5. That the county of Osceola was organized on the first of January, 1872, and the amount of taxable property for the year 1871 was $82,881, and for 1872 was $109,991.

6. That, previous to the issuing of any of the bonds for the payment of the interest of which the tax designated as the judgment bond tax was levied, the county of Osceola had become indebted in an amount exceeding five per cent of the value of the taxable property of the county.

7. That the bonds in question were issued to judgment creditors in payment of judgments against the county of Osceola, under the provisions of section 3275 of the Revision of 1860, as amended by chapter 87 of the Acts of the Fourteenth General Assembly of the State of Iowa; that the judgments were obtained against the county of Osceola upon warrants issued by the board of supervisors during the years 1872 and 1873, in excess of the five per cent limitation to which the county might become indebted, and in violation of the prohibition contained in Sec. 3, Art. 11, of the Constitution of Iowa.

8. That the board of supervisors of said county well knew

that the said warrants were issued in excess of the sum that could be legally issued by the said county, and that the indebtedness for which they were issued was created in excess of the five per cent of the taxable property of the county, as shown by the State and county tax lists of the years previous thereto, and that the warrants were illegal and void; and the said board of supervisors fraudulently colluded with the holders of said warrants, and refused to appear in the courts where the judgments for which these bonds were issued were rendered and set up these defenses against the said warrants, and have the same fully litigated and fairly tried by the courts, and the property of this plaintiff and that of the other property owners in said county protected from the burden of a large public debt; that by reason of such corrupt and fraudulent neglect and collusion of the board of supervisors, a large and grievous debt is created against the said county for which this tax is levied; that the board of supervisors so colluded and conspired with the holders of said warrants and evidences of indebtedness, and refused and neglected to appear in the courts and set up such defenses to the warrants, and to protect the said county, for the purpose and with the intent of evading and setting at naught the constitutional prohibition contained in Sec. 3, Art. 11, of the Constitution.

9. That the tax levied by the board of supervisors was levied for the purpose of raising the money to pay the said bonds and interest thereon, and the treasurer of said county is about to take possession of the property of plaintiff and sell the same to pay the said bonds and interest.

Plaintiff, for further cause of action, alleges: That the auditor of the county of Osceola entered upon the tax lists of said county, for the year 1873, against the main track of plaintiff's road, the following sums of money for road tax of the several townships through which the road passes, to-wit: upon that portion of the road in the township of Holman, $80.62; on that portion of the road lying in Gowry township, $48.37½; on the portion of the road in Wilson township, $62.50. That the said tax was never levied against the property of plaintiff by the township trustees of the townships

and was never carried out against the said property by the township clerks of said townships, and the township clerks did not make out any certified list of delinquent road taxes showing any taxes upon said railroad, and there were no taxes or charges of any road taxes upon said property of plaintiff returned by the clerk of any of said townships; and that plaintiff was never notified to do the work required for that portion of the road tax which could be so paid.

The petition asks that defendants be restrained from collecting the taxes, and that they be declared void and canceled. Upon the filing of the petition a temporary injunction was issued. The defendants answered as follows:

" 1.    Admit the facts stated in the first, second, third, and fourth paragraphs of the petition.

" 2.    They admit the county of Osceola was organized on the 1st day of January, 1872, but they deny the residue of the allegation in the fifth paragraph of the petition contained, and aver that there were no state or county tax lists of said Osceola county for the year 1871, and state said county was not in existence during any part of the year 1871.

" 3.    They admit that at the time of the issuing of the bonds referred to in paragraph six of the petition, the county of Osceola was indebted to some extent, but they deny that it was indebted to an amount exceeding $4,500 when all of said bonds were issued, but was so indebted when some were issued, and they deny they were indebted in a sum exceeding five per cent of the taxable property of said county, as shown by the state and county tax lists, and they admit that in 1873 the county was indebted in the sum of six thousand dollars, but they aver that nearly all the warrants issued upon which judgments were rendered and said bonds were issued, were issued in payment of necessary and ordinary running expenses of said Osceola county, and in anticipation only of the ordinary revenue then accruing, and were not issued in violation of section 3, article 11, of the Constitution of Iowa, and for the purpose and intent of incurring an indebtedness within the meaning of said provision.

" 4.    They admit said bonds were issued to judgment credit-

ors in payment of judgments against the county of Osceola, under the provisions of section 3275 of the Revision of 1860, as amended by subsequent acts of the General Assembly of the State of Iowa, and these defendants aver said bonds were negotiable in form and character, and as they are informed and believe, have passed into the hands of other parties who have purchased them in good faith and for value, without any notice of any claim that they are illegal for any cause.

"5.    They deny allegations of neglect, conspiracies, fraud, collusion, corruption, illegalities, evil purposes and evasions charged in the eighth paragraph of the petition, except as to a very small part of the indebtedness.

"6.    They admit the ninth allegation of the petition.

"7.    And further, answering, they state that the plaintiff was during the years 1872 and 1873, and is, a corporation of Iowa, and for all civil purposes was, during said time, a citizen and resident of the county of Osceola, and a taxpayer therein; that said plaintiff did not object to the obtaining of said judgments, and the issuing of said bonds or any of them at the time the same were obtained and issued, nor until required to pay its share of the public taxation to meet the interest on said bonds; that said bonds were issued in due course of business in payment of judgments obtained upon due process in the courts, and the plaintiff, its agents and attorneys, well knew such proceedings at the time the same took place and made no objection to the same, and that said Osceola county recognizes said indebtedness represented by said bonds, and has no right or power to repudiate any portion thereof, and the same is valid.

"(II.)    1.    For answer to the second cause of action set out in the petition, the defendants admit that the sums stated in said count were carried out, entered and charged upon the tax lists of said Osceola county, by the auditor thereof, as township road tax of the several townships stated in said count for the year 1873, but they deny that the said tax was never levied by the township trustees against the property of the plaintiff, and aver that, on the contrary, the trustees of each of said townships did levy a road tax upon the taxable prop-

erty within said townships. They admit that the township clerks omitted to carrry out the same against the property of the plaintiff as they ought to have done, and admit that the said clerks of said townships failed to show on their certified lists of delinquent road taxes any taxes for road purposes upon the property of plaintiff, as returned by said clerks; and they aver such omission was not intended to injure the plaintiff, and did not in the least prejudice plaintiff's rights. They admit the plaintiff was not notified to do the work.

"2. They deny said sums were illegally and without any authority of law entered against the said plaintiff's railroad, and were illegally included in the tax lists which the treasurer was and is authorized to collect, but aver the same was done by the auditor of said county legally and as authorized by law, and aver that the sums so entered were not in excess of the sum which the plaintiff would have been required to pay had the said township clerks carried out said taxes against the property of the plaintiff's said railroad and duly returned said taxes to said auditor as delinquent, and the plaintiff has not been injured by any irregularities arising out of the return or extension of said taxes, and the whole thereof is equitably and justly payable by the plaintiff.

"3. They admit the defendant, the treasurer, is about to collect the said taxes, and to levy upon and sell the property of the plaintiff to satisfy said taxes, and aver it was and is his intention to levy upon the personal property of the plaintiff for that purpose, unless paid without such proceedings, and they aver that the plaintiff has a full and adequate remedy at law if said taxes are illegal.

"4. They deny each and every allegation of the petition not heretofore admitted.

"5. They pray that defendants may have judgment dissolving the injunction issued in this action, that said taxes may be adjudged to be legal and valid and equitably due, and for costs."

This answer was duly verified. Upon the filing of this answer defendants moved to dissolve the injunction, upon the following grounds:

1. That the equities of the petition, if any, have been fully met by the allegations in the answer.

2. That the plaintiff, by the petition, fails to show any right or equity to the relief prayed.

3. That the petition shows facts which negative the relief prayed.

4. That the irregularities shown by the petition furnish no relief in equity.

The motion was sustained and the injunction was dissolved; plaintiff appeals.

*J. H. Swan*, for appellant.

*R. J. Chase*, for appellee.

Day, J.—I. Appellants admit that the affirmative allegation of the answer that the bonds have passed into the hands of third parties, who purchased them in good faith for value without notice of any claim that they are illegal for any cause, may be considered upon the question presented, except so far as the purchasers may be charged with notice by the records of the county and court.

1. JUDGMENT bonds: innocent holders: negotiable paper.

Section 3275 of the Revision, as amended by chapter 174, Laws of 1872, provides: " In case no property of a municipal corporation, against which an execution has issued, is found upon which to levy, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to demand and receive of such debtor corporation the amount of his judgment and costs, either in the ordinary evidences of indebtedness issued by such corporation, or in bonds of such corporation of such character as the parties may agree upon."

Pursuant to this provision the bonds in question were issued. The question now submitted for our determination is the following: Can the validity of negotiable bonds of a county, issued in satisfaction of a judgment, in the hands of innocent holders for value, without notice of any claim that they are illegal for any cause, be questioned by showing that

the judgments were rendered upon warrants issued in excess of the constitutional limitation of five per cent, and that the board of supervisors fraudulently omitted to interpose the defense when the warrants were sued upon? This question differs from all those which have hitherto been determined, involving the effect of section 3, article 11, of the State Constitution.

Upon mature consideration we are of opinion that bonds so issued cannot be assailed in the hands of innocent holders for value. There is a presumption that those charged with public trusts act honestly and in good faith. The whole theory of the law rests upon this assumption. In the absence of anything to put a party upon inquiry, he has a right to presume that everything has been fairly and honestly done. It is not incumbent upon him to institute an inquiry for the purpose of ascertaining whether some one may not have violated a trust or committed a fraud. It is the duty of the board of supervisors to appear and defend all suits instituted against their respective counties. Every principle of honesty requires, and every consideration of interest stimulates them to interpose all proper and available defenses. When a bond issued in discharge of a judgment is placed upon the market, a purchaser who has no intimation of anything affecting its validity has a right to presume that the board of supervisors have been mindful of their interest and their duty, and that all available defenses have been presented and passed upon. No one is called upon to presume or suspect that anything has occurred which is unusual, unnatural, and not in harmony with man's mental constitution. It is not usual, natural, nor in harmony with the laws of mind, that a board of supervisors, charged with the duty of protecting the interests of the county, should fraudulently conspire to saddle upon the county an unjust judgment, to the payment of which they must themselves contribute. No one, therefore, is required to presume that such a thing has occurred, or should be expected to deal upon the theory that the board have so acted. A vast majority of reasonably careful and prudent business men, when offered a negotiable bond issued in discharge of a judg-

ment, would never think of inquiring whether the board of supervisors had not fraudulently neglected to set up a defense which should have been interposed. The law, to command respect and secure public confidence, must be just and reasonable. And to be just and reasonable it must be adapted to man's nature. A law is not so adapted which demands that a man for the protection of his interests shall do what a large majority of reasonably careful and prudent business men habitually omit to do.

If it be said that this construction nullifies the constitution and places it in the power of a dishonest and corrupt board of supervisors to burden the county with a debt in excess of the constitutional limitation, the answer is, that in the nature of things the instances in which a board of supervisors will undertake to do such a thing must be exceedingly rare. When such an instance occurs, and bonds issued upon a judgment so recovered have passed into the hands of innocent holders, loss must fall either upon such innocent holders or upon the county. It is more consonant with notions of right that the loss should be borne by the county, whose officials have acted corruptly and dishonestly, than upon the third party who has been innocent of all wrong.

Besides, it can rarely occur that a suit against a county can be instituted and prosecuted without coming to the knowledge of at least a considerable number of the citizens of the county. If the board of supervisors corruptly neglect or refuse to defend, a citizen taxpayer of the county may intervene and do so. *Greeley v. The County of Lyon*, 40 Iowa, 72. When no defense has been made, either by the board of supervisors, or a taxpayer, a third party, acting in good faith in the purchase of negotiable bonds issued to discharge the judgment, may presume that there was no valid defense to be interposed.

II. As to the road taxes it is claimed by appellant that no means are provided by which the assessment of railroad prop-

2. TAXATION: erty is placed upon the assessment book of the
assessment:
railroads.          township; that the assessment book of the township as returned by the township assessor is made the basis of the levy of the road tax, that the levy is made upon the

roll as the assessor returns it, and not upon any other property or other amount, and hence cannot be made upon railroad property which never appears upon the assessor's book. If these positions be correct, the results will be startling in the extreme. They will operate to defeat not only road taxes, but all other taxes as well upon railroad property, for there is no provision in chapter 26, laws of 1872, under which this tax was levied, for placing the assessment of railroad property upon the assessor's books. This chapter provides that the census board shall assess railroad property, and transmit to the board of supervisors of each county through which the road runs a statement showing the assessed value per mile, and the length of main track of road in the county. It is the duty of the board of supervisors to make and enter in the proper record an order, declaring the length of the main track and assessed value of the road lying within each city, town, township and lesser taxing district in the county, and to transmit a copy of the order to the city council or trustees of each city or incorporated town or township. This order, so transmitted, becomes the basis for the levy of taxes upon railroad property.

III. The allegation of the petition that no tax was ever
3. ———:irreg- levied by the township trustees of the respective
ularities. townships named is expressly denied in the answer.

The other allegations of the petition which are admitted constitute mere irregularities, and do not affect the validity of the tax. *The Iowa Railroad Land Company v. The County of Sac*, 39 Iowa, 124; *Same v. Carroll County*, Id., 151; *Cedar Rapids & Missouri R. R. Company, v. Carroll County*, 41 Iowa, 153.

The fact that plaintiff has not been notified to work out the part of the road tax which might be paid in work will
4. ——: ——: not authorize the restraining of the collection of
road tax. the entire tax. Perhaps upon a proper offer to work out the proportion of tax which may be paid in work, the collection of that part of it might be enjoined, and an opportunity to pay in work afforded. But this we need not determine, for no such offer has been made.

Vol. xlv—12

Upon a careful examination of the pleadings in this case, we are of opinion that the court did not err in dissolving the injunction.

AFFIRMED.

BECK, J., *dissenting.*—I. Upon the point involving the validity of the taxes levied to pay the bonds, I am unable to concur in the conclusions of the foregoing opinion. In my judgment the constitutional prohibition against county indebtness operates upon the *debt* attempted to be contracted whatever shape it may assume, or whatever evidence of its existence is created. It matters not whether the prohibited debt is evidenced by bond or judgment, it is utterly void—a nullity wherever, whenever, however it makes its appearance as a claim upon the county. The prohibition operates upon the creditor, the people of the county, the officers of the county, the county as a corporation, and upon all who become in any way interested in the matter; it operates, too, upon the courts and judgments rendered by the courts attempting to enforce the unconstitutional debts. These are all subordinate to the constitution.

When the supreme law of the State declares that the debt cannot be contracted, it means that it cannot exist. This law cannot be defeated by the people of the county, willing to contract the debt, by county officers consenting to a judgment, by judgment of a court, nor by any means to which violators of the constitution and law may resort.

It surely is inconsistent with the dignity and power of the State to hold that the people, county officers and courts of the State, may defeat the express provision of the supreme law— may render valid and enforce a debt which the constitution declares cannot be contracted and shall not exist.

The whole world must take notice of the provisions of the constitution. No one can claim to be a *bona fide* holder without notice of a bond issued for a debt forbidden by that instrument. No holder of such a bond can have any equity that will defeat the constitution.

These views and the conclusion I reach, in my opinion, are

supported by our decisions in *McPherson et al. v. Foster Bros. et al.*, 43 Iowa, 48; and *Mosher. v. Ind. School Dist. of Ackley*, 44 Iowa, 122.

II.  I assent to the conclusions of the opinion of the majority of the court upon the questions involving the validity of the road taxes, and concur in the opinion to that extent, but no farther.