THE S. C. & ST. P. R. CO. v. OSCEOLA COUNTY.

1. **Taxation**: MUNICIPAL BONDS: COUNTY INDEBTEDNESS. The validity of negotiable bonds of a county issued in satisfaction of judgments, in the hands of innocent holders for value, cannot be questioned by showing that the judgments were rendered upon warrants issued in excess of the constitutional limitation of five per cent, and a tax levied to pay the principal and interest of such bonds may be enforced. Following *The S. C. & St. P. R. Co. v. Osceola County*, 45 Iowa, 168. BECK, CH. J., *dissenting*.

2. ——: ——: ——. Bonds issued by counties under the provisions of chapter 87, laws of 1872, are payable in all respects as is provided in chapter 1, title IV of the Code. It is the duty of the board of supervisors to levy the bond tax as there provided for their payment, and such tax is not limited by section 840 of the Code to three mills.

*Appeal from Osceola Circuit Court.*

THURSDAY, OCTOBER 9.

THE county of Osceola issued warrants in 1872, amounting to $24,040.19, and in 1873, amounting to $20,167.04. Upon the warrants issued during the year 1872, judgments were recovered during said year against the county for the sum of $11,490, and to pay the same and interest and costs, the county during said year, issued its negotiable judgment bonds, under the provisions of chapter 87, of the acts of the Fourteenth General Assembly, to the amount of $11,700. During the year 1873, judgments were rendered against the county upon the warrants issued in 1872 and 1873, to the amount of $21,466.35, and to pay the same and interest and costs, the

county during said year issued its negotiable judgment bonds, under said chapter 87, acts of Fourteenth General Assembly, in the amount of $21,600. The principal of all of these bonds is unpaid. During the year 1872, the county issued ten negotiable bonds in the sum of $500 each, for the purpose of building a court-house, four of which remain unpaid. From August 1st, 1874, to July 6th, 1876, the board of supervisors of said county issued its negotiable bonds in the manner and form prescribed in section 289, of the Code of 1873, to the amount of $24,200, and the same were sold or exchanged, under the provisions of section 289 and the following sections of the Code, for the warrants or other evidences of indebtedness against the county. Of the above amount, $9,000 of bonds were issued in exchange for judgments which had been obtained against the county upon county warrants, and the sum of $15,200 were issued in exchange for county warrants held against the said county. All of the bonds aforesaid were transferred by the original holders thereof, before the commencement of this suit, and the present owners thereof are unknown. All of the warrants aforesaid, both those reduced to judgment and those funded without being reduced to judgment, were issued in excess of the limit of indebtedness which the county might incur under, section 3, article 11 of the Constitution.

The plaintiff is the owner of $17\frac{99}{100}$ miles of railroad track in said county, which was duly assessed at $3,000 per mile.

There was levied against said property for the year 1876 the following taxes, to-wit: For payment of principal and interest on court-house bonds, five mills. For payment of principal and interest on judgment bonds, twelve mills. For payment of principal and interest on county funding bonds, eight mills. The plaintiff has paid the court-house bond tax, and has deposited with the treasurer four mills of the judgment bond tax. The plaintiff asks that the other taxes be adjudged void, and that the treasurer be restrained from collecting the same.

The tax above described, of twelve mills on the dollar, was levied to pay the interest, and a portion of the principal, of the bonds described as having been issued under the authority of

chapter 87, acts of the Fourteenth General Assembly. The tax of eight mills on the dollar was levied to pay the interest, and a portion of the principal, of the bonds issued under authority of section 289 of the Code. The court rendered a judgment canceling five mills of the eight mill levy, to pay funding bonds, being such part of that tax as would be required to pay interest on such funding bonds as were issued to fund warrants, and dismissed the plaintiff's petition as to the remainder of the tax. The plaintiff appeals.

*J. H. Swan*, for appellant.

*S. M. Marsh* and *Geo. W. Wakefield*, for appellees.

DAY, J.—I. The tax of eight mills on the dollar was levied for the purpose of paying the interest, and a part of the principal, of the funding bonds issued under the author-

1. TAXATION: municipal bonds: county indebtedness.

ity of section 289 of the Code. The court refused to restrain the collection of three mills of this tax, being the portion necessary to pay interest on such of the funding bonds as were exchanged for judgments rendered against the county upon county warrants. Appellant insists that these bonds are void, and that any levy of tax to pay them is illegal. The original holders of these bonds had transferred them before the commencement of this action. The present holders are not parties to this suit. They must, therefore, for the purposes of this action, be regarded as innocent holders for value. In a case between these same parties, 45 Iowa, 168, it was held by a majority of this court that the validity of negotiable bonds of a county, issued in satisfaction of a judgment, in the hands of innocent holders for value, cannot be questioned by showing that the judgments were rendered upon warrants issued in excess of the constutional limitation of five per cent, and that a tax levied to pay the interest and principal of such bonds could be enforced. The judges concurring in that opinion are still content therewith. The majority opinion in that case is decisive both of the validity of these funding bonds, and of the tax levied to pay the interest and part of the principal thereon.

II. It is conceded that the judgment bonds involved in this case are the same bonds that this court held to be valid in 45 Iowa, 168. It is claimed, however, that if these bonds should be held to be legal, still the board of supervisors have no power to levy a tax to pay such bonds, in excess of the six mills authorized for ordinary revenue, or at the farthest in excess of the three mills limited by section 840 of the Code. These bonds were issued under chapter 87, acts of Fourteenth General Assembly, which provides: "In case no property of a municipal corporation, against which an execution has issued, is found upon which to levy, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to demand and receive of such debtor corporation the amount of his judgment and costs, either in the ordinary evidences of indebtedness issued by such corporation, or in bonds of such corporation, of such character as the parties may agree upon   *   *   *   . And, if bonds shall be issued in payment of judgments as above provided, said bonds shall be issued in substantially the same form as is provided by chapter 54, of the acts of the Thirteenth General Assembly of the State of Iowa, entitled 'An act to provide for the funding of county indebtedness, and for the payment thereof,' and said bonds shall draw interest at a rate not to exceed ten per cent, and both principal and interest shall be and become due, and shall be payable, in the same time and manner as provided for in said chapter." It is claimed that these provisions do not authorize the levy of any tax for the payment of the bonds issued pursuant to the provisions of this chapter. Section three, of chapter 54, acts of the Thirteenth General Assembly provides: "It shall be the duty of the board of supervisors to cause to be assessed and levied each year, upon the taxable property of the county, in addition to the levy authorized for other purposes, a sufficient sum to pay the interest on outstanding bonds accruing before the next annual levy, and such proportion of the principal that at the end of three years the sum raised from such levies shall equal at least twenty per cent of the whole amount of bonds issued; at the end of five years at least forty per cent of the amount; and at

and before the date of maturity of the bonds, shall be equal to the whole amount of principal and interest; and the money arising from such levies shall be known as the bond fund, and shall be used for the payment of bonds and interest coupons, and for no other purpose whatever; and the treasurer shall open and keep in his books a separate and special account thereof, which shall at all times show the exact condition of said bond fund." We think that the reference to this chapter for the time and manner of the payment of the bonds authorized in chapter 87, acts of the Fourteenth General Assembly, makes all these provisions respecting the manner of raising a fund for their payment applicable, and authorizes the board of supervisors to levy a tax for that purpose.

It is urged further, however, that section 840 of the Code limits the special tax which may be levied for the payment of these bonds, to three mills on the dollar upon the last corrected valuation. This section expressly reserves from its operation the bonded indebtedness provided for in section 291 of the Code, which is the same as section 3, chapter 54, acts of the Thirteenth General Assembly. As taxes are to be levied for the bonds in question in the same manner as provided in section 3, chapter 54, acts of the Thirteenth General Assembly, section 291 of the Code, we think the bonds in question are excepted from the operation of section 840 of the Code.

III. It is claimed further that the tax of twelve mills is more than can be levied for the payment of the interest, and the portion of the principal authorized by section 291 of the Code. This section of the Code does not limit the board of supervisors to the levy of such an amount of tax as shall pay only the specified portions of the principal, but requires that the levy shall be sufficient to pay at least such portion. The evidence shows that the levy of a tax of twelve mills for judgment bonds, and of eight mills for funding bond tax, was made with the calculation that it would simply pay the interest on the bonds, from the fact that there was considerable unavailable property, and that the tax was in fact all wanted to pay the interest. The board had a right to take into consideration the contingencies which would likely reduce the amount of tax collected,

and to levy such sum as it might reasonably be expected would be necessary to pay the interest, and provide for the gradual liquidation of the principal. The record disclosed no error.

AFFIRMED.

BECK, CH. J., dissents, and adheres to the views expressed by him in *Sioux City & St. Paul Railway Co. v. County of Osceola*, 45 Iowa, 168.