## DOON TOWNSHIP *v.* CUMMINS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

No. 883. Submitted January 6, 1891. — Decided January 4, 1892.

By virtue of Art. 11, sec. 3 of the constitution of Iowa of 1857, which ordains that " no county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation — to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness," negotiable bonds, in excess of the constitutional limit, issued by a school district, and sold by its treasurer, for the purpose of applying the proceeds of the sale to the payment of the outstanding bonded indebtedness of the district, pursuant to the statute of Iowa of 1880, c. 132, are void as against one who purchases them from the district with knowledge that the constitutional limit is thereby exceeded.

The original action was brought by Theron Cummins, a citizen of Illinois, on coupons attached to negotiable bonds issued by the defendant, a district township of Iowa, under the statute of Iowa of 1880, c. 132, the material provisions of which are copied in the margin.[1]

---

[1] Sec. 1. Any independent school district or district township now or hereafter having a bonded indebtedness outstanding is hereby authorized to issue negotiable bonds at any rate of interest not exceeding seven per cent per annum, payable semi-annually, for the purpose of funding said indebtedness, said bonds to be issued upon a resolution of the board of directors of said district: provided, that said resolution shall not be valid unless adopted by a two-thirds vote of said directors.

The defendant denied the validity of the bonds, on the ground that they were issued in violation of the constitution of Iowa of 1857, art. 11, sec. 3, likewise copied in the margin.[1]

A jury was duly waived, and the case was submitted to the Circuit Court, which found the following facts:

The defendant is a school district in Lyon County, Iowa, having power to contract in its corporate name, and to issue negotiable bonds. From the date of its organization its affairs have been badly managed, and, through fraud and incompetency on the part of the officers of the district, indebtedness to a very large extent has been created against the district, part of which was evidenced by bonds of the district, part by judgments against it, and part by warrants or orders drawn on its different funds.

On July 9, 1881, the board of directors of the district unanimously adopted a resolution to issue " for the purpose of funding the outstanding bonded indebtedness of the district" bonds to an amount not exceeding $25,000, in accordance with the statute aforesaid, to run for ten years, and payable after five years at the pleasure of the district, and bearing interest at the annual rate of seven per cent, with interest coupons attached; and appointing one Richards "refunding agent to negotiate said bonds," to take up the aforesaid indebtedness, and to report his doings to the district.

In pursuance of this resolution, twenty-five bonds were prepared and signed by the proper officers of the district, dated July 11, 1881, for the sum of $1000 each, having the statute

---

SEC. 2. The treasurer of such district is hereby authorized to sell the bonds provided for in this act at not less than their par value, and apply the proceeds thereof to the payment of the outstanding bonded indebtedness of the district, or he may exchange such bonds for outstanding bonds, par for par, but the bonds hereby authorized shall be issued for no other purpose than the funding of outstanding bonded indebtedness. Laws of Eighteenth General Assembly of Iowa, 127.

[1] No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation — to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness. 1 Charters and Constitutions, 565.

aforesaid printed upon them, and containing the following recital: "This bond is executed and issued by the board of directors of said school district in pursuance of and in accordance with chapter 132, laws of the eighteenth general assembly of Iowa, is in accordance with the laws and constitution of the State of Iowa, and in conformity with a resolution of said board of directors passed in accordance with said chapter 132 at a meeting thereof held 9th day of July, 1881."

Ten of these bonds were sold on July 25, 1881, and ten others on August 11, 1881, for their par value in cash, by Richards to the plaintiff, who, at the time of his first purchase, knew that it was the defendant's purpose to issue bonds to the amount of $20,000 at least, or $25,000 if necessary. The remaining five bonds were sold by Richards on December 20, 1881, to another party.

At the time of issuing the bonds in question, the total valuation of the taxable property within the district, as shown by the next preceding state and county tax lists, was $131,038. The evidence failed to show the exact amount of bonds of the defendant outstanding on July 11, 1881; but the amount of such bonds, with interest, exceeded $20,000. Large amounts of warrants had been issued by the district from time to time for various purposes, a portion, at least, of which was fraudulent; and there were outstanding unsatisfied judgments against it for $11,700. Many frauds had been perpetrated by the officers of the district, and thereby the amount of indebtedness evidenced by its bonds and by judgments against it had been fraudulently increased. But the evidence failed to show that any of those bonds had been issued in violation of the above provision of the constitution of Iowa, or that a successful defence could have been interposed by the defendant against the holders of any of them.

Of the proceeds of the sale of the new bonds, the sum of $19,174 was paid out by Richards at various times from July 30, 1881, to March 4, 1882, in discharging bonds, coupons, judgments, warrants and orders drawn on the teachers', contingent and schoolhouse funds, and the balance of $6485.79 was paid to the defendant's treasurer. His report, which was made

part of the findings of fact, showed that of the sum of $19,174, less than $6000 was applied to the payment of outstanding bonds and coupons, $875 in paying interest on the new bonds, and the rest to the other purposes above mentioned.

The defendant regularly paid interest on the new bonds until and including July, 1885; and this action was brought on the coupons falling due in 1886, 1887, 1888 and 1889.

On these facts the court gave judgment for the plaintiff for $6462.40, being the amount of the coupons sued on, with interest. 42 Fed. Rep. 644. The defendant sued out this writ of error.

*Mr. B. F. Kauffman, Mr. A. Van Wagenen, Mr. H. T. McMillan* and *Mr. N. T. Guernsey* for plaintiff in error, cited: *Dixon County* v. *Field,* 111 U. S. 83; *School District* v. *Stone,* 106 U. S. 183; *Lake County* v. *Rollins,* 130 U. S. 662; *Lake County* v. *Graham,* 130 U. S. 674; *McPherson* v. *Foster,* 43 Iowa, 48; *Mosher* v. *Ackley School District,* 44 Iowa, 122; *King* v. *Mahaska County,* 75 Iowa, 329; *Scott* v. *City of Davenport,* 34 Iowa, 208; *Council Bluffs* v. *Stewart,* 51 Iowa, 385; *Austin* v. *District Township of Colony,* 51 Iowa, 102; *Railroad Co.* v. *Osceola County,* 45 Iowa, 168; *Wisconsin Central Railroad* v. *Taylor County,* 52 Wisconsin, 37.

*Mr. J. H. Swann, Mr. M. B. Davis* and *Mr. W. E. Gantt* for defendant in error, cited, among others: *Miller* v. *Nelson,* 64 Iowa, 458; *Railroad Co.* v. *Osceola County,* 45 Iowa, 168, 52 Iowa, 26; *School District* v. *Stone,* 106 U. S. 183; *Bates* v. *School District of Riverside,* 25 Fed. Rep. 192; *Griffith* v. *Burden,* 35 Iowa, 138; *Morris Canal & Banking Co.* v. *Fisher,* 9 N. J. Eq. (1 Stockton) 667; *S. C.* 64 Am. Dec. 423; *Bluff Creek* v. *Hardinbrook,* 40 Iowa, 130; *Taylor Township* v. *Morton,* 37 Iowa, 550; *Union Township* v. *Smith,* 39 Iowa, 9; *Wilson* v. *Salamanca,* 99 U. S. 499; *Coloma* v. *Eaves,* 92 U. S. 484; *Marcy* v. *Oswego,* 92 U. S. 637; *Buchanan* v. *Litchfield,* 102 U. S. 278; *Northern Bank* v. *Porter Township,* 110 U. S. 608; *Sherman County* v. *Simons,* 109 U. S. 735; *Humboldt*

*Township* v. *Long*, 92 U. S. 642; *Lynde* v. *The County of Winnebago*, 16 Wall. 6; *Commissioners* v. *January*, 94 U. S. 202; *County of Warren* v. *Marcy*, 97 U. S. 96; *Commissioners of Douglas County* v. *Bolles*, 94 U. S. 104; *Pana* v. *Bowler*, 107 U. S. 529; *Supervisors* v. *Schenck*, 5 Wall. 772; *Portsmouth Savings Bank* v. *Springfield*, 4 Fed. Rep. 276; *Moran* v. *Miami County*, 2 Black, 722; *Bissell* v. *Jeffersonville*, 24 How. 287; *Mercer County* v. *Hacket*, 1 Wall. 83; *Meyer* v. *Muscatine*, 1 Wall. 384; *Van Hostrup* v. *Madison City*, 1 Wall. 291; *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Rogers* v. *Burlington*, 3 Wall. 654; *Lexington* v. *Butler*, 14 Wall. 282; *Grand Chute* v. *Winegar*, 15 Wall. 355, 372; *St. Joseph Township* v. *Rogers*, 16 Wall. 644; *Coloma* v. *Eaves*, 92 U. S. 484; *Town of Venice* v. *Murdock*, 92 U. S. 494; *Moultrie* v. *Savings Bank*, 92 U. S. 631; *Randolph County* v. *Post*, 93 U. S. 502; *Leavenworth* v. *Barnes*, 94 U. S. 70; *Johnson County* v. *Thayer*, 94 U. S. 631; *Cass County* v. *Johnston*, 95 U. S. 360; *San Antonio* v. *Mehaffey*, 96 U. S. 312; *Warren County* v. *Marcy*, 97 U. S. 96; *Hackett* v. *Ottawa*, 99 U. S. 86; *Schuyler County* v. *Thomas*, 98 U. S. 169; *Anthony* v. *Jasper County*, 101 U. S. 693; *Pompton Township* v. *Cooper Union*, 101 U. S. 196; *Harter* v. *Kernochan*, 103 U. S. 562; *Bonham* v. *Needles*, 103 U. S. 648; *Walnut* v. *Wade*, 103 U. S. 683; *Clay County* v. *Savings Society*, 104 U. S. 579; *Moultrie County* v. *Fairfield*, 105 U. S. 370; *Insurance Co.* v. *Bruce*, 105 U. S. 328; *Knox County* v. *Aspinwall*, 21 Howard, 539.

Mr. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The constit tion of Iowa, art. 11, sec. 3, ordains as follows: "No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation — to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."

The scope and meaning of this provision of the fundamental and paramount law of the State are clear and unmistakable. No municipal corporation "shall be allowed" to contract debts beyond the constitutional limit. When that limit has been reached, no debt can be contracted "in any manner, or for any purpose." The limit of the aggregate debt of the 1 .u 1icipality is fixed at five per cent of the value of the taxable property within it; and that value is to be ascertained "by the last state and county tax lists," which are public records, open to all, and of the contents of which all are bound to take notice. The prohibition is addressed to the legislature, as well as to all municipal boards and officers, and to the people, and forbids any and all of them to create, or to give binding force to, any debts of the corporation in excess of the limit prescribed. The prohibition extending to .debts contracted "in any manner, or for any purpose," it matters not whether they are in every sense new debts, or are debts contracted for the purpose of paying old ones, so long as the aggregate of all debts, old and new, outstanding at one time, and on which the corporation is liable to be sued, exceeds the constitutional limit. The power of the legislature in this respect being restricted and controlled by the constitution, any statute which purports to authorize a municipal corporation to contract debts in any manner or for any purpose whatever in excess of that limit is to that extent unconstitutional and void.

By the terms of the statute of Iowa of 1880, c. 132, under which the bonds in question were issued, any independent school district or district township, having a bonded indebtedness outstanding, is authorized to issue negotiable bonds for the purpose of funding that indebtedness; and "the treasurer of such district is hereby authorized to sell the bonds provided for in this act at not less than their par value, and apply the proceeds thereof to the payment of the outstanding bonded indebtedness of the district, or he may exchange such bonds for outstanding bonds, par for par."

There is a wide difference in the two alternatives which this statute undertakes to authorize. The second alternative, of

exchanging bonds issued under the statute for outstanding bonds, by which the new bonds, as soon as issued to the holders of the old ones, would be a substitute for and an extinguishment of them, so that the aggregate outstanding indebtedness of the corporation would not be increased, might be consistent with the constitution. But under the first alternative, by which the treasurer is authorized to sell the new bonds and to apply the proceeds of the sale to the payment of the outstanding ones, it is evident that if (as in the case at bar) new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding, and on which the corporation is liable to be sued, is at once and necessarily increased, and, if new bonds equal in amount to the old ones are so issued at one time, is doubled; and that it will remain at the increased amount until the proceeds of the new bonds are applied to the payment of the old ones, or until some of the obligations are otherwise discharged.

It is true that if the proceeds of the sale are used by the municipal officers, as directed by the statute, in paying off the old debt, the aggregate indebtedness will ultimately be reduced to the former limit. But it is none the less true, that it has been increased in the interval; and that unless those officers do their duty, the increase will be permanent. It would be inconsistent alike with the words, and with the object, of the constitutional provision, framed to protect municipal corporations from being loaded with debt beyond a certain limit, to make their liability to be charged with debts contracted beyond that limit depend solely upon the discretion or the honesty of their officers.

There could be no better illustration of the reasonableness, if not the necessity, of this construction, in order to secure to municipal corporations the protection intended and declared by the constitution of the State, than is afforded by the facts of the present case. The total valuation of the property of the district, as shown by the last state and county tax list before it issued the bonds in question, was $131,038, five per cent of which, or $6551.90, was the limit beyond which it was prohibited by the constitution to contract debts. Its outstand-

ing bonded debt was already not less than $20,000, which upon the facts found must be assumed to be valid. For the purpose of funding that debt it executed and sold bonds to the amount of $25,000, and it actually applied less than $6000 of the proceeds of the sale to the payment of outstanding bonds. The result of holding the new bonds good would be to double the whole bonded debt of the district, and to bring it up to about thirty per cent of the valuation.

This construction of the constitution of Iowa appears to us to be warranted, and indeed required, by previous decisions of this court.

In construing a prohibition of the constitution of Illinois of 1870, art. 9, sec. 12, expressed in substantially the same words, this court, speaking by Mr. Justice Harlan, said: "The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness. The purpose of its framers, beyond all question, was to withhold from the legislative department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount." "No legislation could confer upon a municipal corporation authority to contract indebtedness which the constitution expressly declared it should not be allowed to incur." *Buchanan* v. *Litchfield*, 102 U. S. 278, 287, 288. It is proper to add that the bonds there held invalid recited that they had been issued in accordance with a certain legislative act and municipal ordinance, but neither the bonds, the statute, nor the ordinance, mentioned the constitutional restriction ; and that it was intimated in the opinion that if the bonds had contained further recitals which, fairly construed, amounted to a representation that the proposed indebtedness was within the constitutional limit, the city might have been estopped to dispute the truth of the representation as against a *bona fide* holder of the bonds. 102 U. S. 290, 292. This court afterwards held that the original purchaser of the bonds thus held invalid could not maintain a suit in equity against the city to recover back the money paid for them ; and, speaking by Mr. Justice Miller, after quoting the constitutional provision, and emphasizing the words " *indebted*

*in any manner or for any purpose,*" said: "It shall not *become indebted.* Shall not incur any pecuniary liability. It shall not do this in *any manner.* Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any *purpose.* No matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law." *Litchfield* v. *Ballou,* 114 U. S. 190, 192, 193.

In *Dixon County* v. *Field,* 111 U. S. 83, there was brought in question the effect of the constitution of Nebraska of 1875, art. 12, sec. 2, prohibiting any county or other subdivision of the State from ever making donations to any railroad, without a vote of the qualified electors thereof at an election held by authority of law, and providing that its donations " in the aggregate shall not exceed ten per cent of the assessed valuation of county," (with a proviso immaterial to that case,) and that " no bonds or other evidences of indebtedness so issued shall be valid unless the same shall have indorsed thereon a certificate signed by the secretary and auditor of the State, showing that the same is issued pursuant to law." Bonds issued by a county beyond ten per cent of its assessed valuation were held to be void, even in the hands of a *bona fide* holder, although each bond, after stating the whole amount issued, stated that they were issued pursuant to an order of the county commissioners, and authorized by an election held on a certain day, and under and by virtue of certain statutes, and the constitution of the State; and bore a certificate of the secretary and auditor that " it was issued pursuant to law." In delivering the opinion of the court, Mr. Justice Matthews said: " We regard the entire section as a prohibition upon the municipal bodies enumerated, in the matter of creating and increasing the public debts, by express and positive limitations upon the legislative power itself." 111 U. S. 89. " No recital involving the amount of the assessed taxable valuation of the

property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount, as fixed by reference to that record, that is made by the constitution the standard for measuring the limit of the municipal power." 111 U. S. 95.

The constitution of Colorado of 1876, art. 11, sec. 6, provides that the indebtedness contracted in any one year, by any county having a valuation of not less than one million of dollars, shall not exceed a certain per cent on its assessed valuation, and that "the aggregate amount of indebtedness of any county, for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above herein limited." This court held, in *Lake County* v. *Rollins*, 130 U. S. 662, that this provision limited the power of the county to contract debts for any purpose whatever; and in *Lake County* v. *Graham*, 130 U. S. 674, that the county was not estopped, as against a *bona fide* holder for value, to show that the constitution had been violated by issuing bonds which recited the whole amount issued, and that they were issued "under and by virtue of and in full compliance with" a certain statute, and that "all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond." In the latter case, Mr. Justice Lamar, delivering judgment, said: "In this case the constitution charges each purchaser with knowledge of the fact that, as to all counties whose assessed valuation equals one million of dollars, there is a maximum limit, beyond which those counties can incur no further indebtedness under any possible conditions, provided that, in calculating that limit, debts contracted before the adoption of the constitution are not to be counted." 130 U. S. 680. And again: "In this case the standard of validity is created by the constitution. In that standard two factors are to be considered; one the amount of assessed value, and the other the ratio between that assessed value and the debt proposed. These being exactions of the constitution itself, it is not within the power of a legislature to dispense with them, either directly, or indirectly, by the creation of a ministerial commission whose

finding shall be taken in lieu of the facts. In the case of *Sherman County* v. *Simons*, 109 U. S. 735, and others like it, the question was one of estoppel as against an exaction imposed by the legislature; and the holding was that the legislature, being the source of exaction, had created a board authorized to determine whether its exaction had been complied with, and that its finding was conclusive to a *bona fide* purchaser." 130 U. S. 683, 684.

It is hardly necessary to add that the payment of some instalments of interest cannot have the effect of ratifying bonds issued beyond the constitutional limit; for a ratification can have no greater effect than a previous authority; and debts which neither the district nor its officers had any power to authorize or create cannot be ratified or validated by either of them, by the payment of interest, or otherwise. *Marsh* v. *Fulton County*, 10 Wall. 676; *Loan Association* v. *Topeka*, 20 Wall. 655; *Daviess County* v. *Dickinson*, 117 U. S. 657; *Norton* v. *Shelby County*, 118 U. S. 425, 451.

In the Supreme Court of Iowa, it is settled law that the constitutional restriction includes not only municipal bonds, but all forms of indebtedness, except warrants for money actually in the treasury, and perhaps contracts for ordinary expenses within the limits of the current revenues. *Scott* v. *Davenport*, 34 Iowa, 208; *McPherson* v. *Foster*, 43 Iowa, 48; *Mosher* v. *Ackley District*, 44 Iowa, 122; *Council Bluffs* v. *Stewart*, 51 Iowa, 385; *Kane* v. *Rock Rapids District*, 47 Northwestern Reporter, 1076. And a school district has been adjudged to be a political or municipal corporation within the meaning of the constitution. *Winspear* v. *Holman District*, 37 Iowa, 542; *Mosher* v. *Ackley District* and *Kane* v. *Rock Rapids District*, above cited.

In *Scott* v. *Davenport*, it was held that after the constitutional limit had been reached, by debts contracted either before or after the constitution took effect, no new debts could be contracted, even for the purpose of erecting public works from which it was expected that the city would derive a revenue. In *McPherson* v. *Foster*, it was held that bonds issued in excess of the constitutional limit were void, even in the hands

of a *bona fide* purchaser for value, and could not be ratified by the municipality, by payment of interest or otherwise. In *Mosher* v. *Ackley District*, it was again held that such bonds were void against a *bona fide* holder, and that a statute giving a lien on a schoolhouse for, materials for which such bonds had been given was unconstitutional. In *Council Bluffs* v. *Stewart*, it was held that uncollected taxes and the levy for the current year could not be deducted from the outstanding debt for the purpose of ascertaining the real indebtedness, and that the contrary view "confounds the distinction between an indebtedness and insolvency." 51 Iowa, 396.

The Iowa cases cited by the defendant in error fail to support his position. In *Austin* v. *Colony District*, 51 Iowa, 102, the limit in question was not fixed by the constitution, but by a vote of the district. In *Sioux City* v. *Weare*, 59 Iowa, 95, the bond held valid was issued and received in payment and satisfaction of a judgment for a tort, and that judgment was not shown to have been in excess of the constitutional restriction. There the bond took the place of the judgment, and therefore, as observed by the court, did not increase the city's indebtedness.

The case of *Sioux City & St. Paul Railway* v. *Osceola County*, 45 Iowa, 168, arose under the statute of Iowa of 1872, c. 174, which provided that a judgment creditor of a municipal corporation, in lieu of an execution against its property, might demand and receive the amount of his judgment and costs in bonds of the corporation; and the decision was that a bond given by a county under that statute, in payment of a judgment recovered upon a warrant of the corporation, could not be defeated in the hands of a *bona fide* holder by evidence that the warrant was issued in excess of the constitutional restriction, and that the supervisors of the county fraudulently omitted to interpose the defence in the action upon the warrant. That decision went upon the ground that, there having been no defence by the supervisors nor interposition by the taxpayers in the action on the warrant, the purchaser of the bond had the right to presume that there was no defect in the judgment. 45 Iowa, 175, 176. In a subsequent

case between the same parties, the county, having given bonds partly in exchange for county warrants and partly in exchange for judgments upon such warrants, all the warrants having been issued in excess of the constitutional limit, and all the bonds having passed out of the hands of their original holders, was restrained by injunction from paying the bonds exchanged for warrants on which no judgment had been recovered, and was permitted to pay those bonds only given in exchange for judgments. Appeal was taken from the latter part of the decree only, and the judgment of the Supreme Court of the State, following its former decision between the parties, was confined, in express terms, as well as in legal effect, to "the validity of negotiable bonds of a county, issued in satisfaction of a judgment, in the hands of innocent holders for value." 52 Iowa, 26, 28. The rule there acted on is restricted to such a case in the opinion in *Miller* v. *Nelson*, 64 Iowa, 458, 461, and by the adjudication of the same court in a very recent case not yet published in the official reports. *Kane* v. *Rock Rapids District*, 47 Northwestern Reporter, 1076.

In the case at bar, the new debts did not arise on warrants for money actually in the treasury of the district, or on contracts for ordinary expenses payable out of its current revenues; and none of the bonds in question were given in payment and satisfaction of judgments. Nor did the plaintiff buy the bonds for value, in good faith, and without notice of any defect, from one to whom they had been issued by the district. He was himself the person to whom they were originally issued by the district, and knew, when he took the first ten bonds, that the district, in issuing them, exceeded the constitutional limit, as appearing by public records of which he was bound to take notice, and that it intended still further to exceed that limit. Under such circumstances he had no right to rely on the recitals in the bonds, even if these could otherwise have any effect as against the plain provision of the constitution of the State. By the uniform course of the decisions of the Supreme Court of Iowa, therefore, as well as of this court, he cannot maintain this action.

*Judgment reversed, and case remanded to the Circuit Court with directions to enter judgment for the defendant.*

Mr. Justice Brown, (with whom concurred Mr. Justice Harlan and Mr. Justice Brewer,) dissenting.

These bonds were issued under an act of the legislature authorizing district townships having a bonded indebtedness outstanding to issue negotiable bonds for the purpose of funding such indebtedness, and subject to a constitutional provision that no municipal corporation shall become indebted in any manner or for any purpose to an amount in the aggregate exceeding five per cent on the value of the taxable property within such corporation. The bonds were certified by the proper officers of the district to have been executed and issued in pursuance of and in accordance with the statute authorizing such bonds, (a copy of which was printed upon the bonds,) and in accordance with the laws and constitution of the State of Iowa, and in conformity with the resolution of the board of directors, etc. Plaintiff purchased these bonds, for their par value in cash, of one Richards, who had been appointed "refunding agent to negotiate the bonds." Under the provision of the constitution, the township had no power to create an indebtedness in excess of $6551.90, that being five per cent of the taxable property of the township, as shown by the last tax list previous to the issuance of said bonds.

But, granting that the indebtedness already existing exceeded the constitutional limit, these bonds were issued, not for the purpose of increasing this indebtedness, but merely to change its form and reduce its rate of interest. The object of the constitutional provision was to prevent the incurrence of a new debt or the increase of an existing debt beyond a limited amount. The object of the statute was to enable district townships to fund their indebtedness by issuing and selling bonds at not less than their par value, and applying the proceeds to the payment of such outstanding indebtedness, or by exchanging such bonds for outstanding bonds. If the construction placed upon this statute by the court be correct, it is difficult to see how any township can avail itself of it, if such township has an existing indebtedness up to the amount of the constitutional limitation, since the new bonds, whether

issued to be sold for cash or to be exchanged for other bonds, must, while the process of sale or exchange is going on, nominally increase the indebtedness of the corporation. I regard this as too technical an interpretation of the constitutional provision.

In giving a construction to this clause, the Supreme Court of Iowa held in *S. C. & St. P. R. R. Co.* v. *The County of Osceola,* 45 Iowa, 168, that the validity of negotiable bonds of a county, issued in satisfaction of a judgment, in the hands of innocent holders for value, without notice of any claim that they are illegal for any cause, could not be questioned, by showing that the judgments were rendered upon warrants issued in excess of the constitutional limitation of five per cent, and that the board of supervisors fraudulently omitted to interpose the defence when the warrants were sued upon. "When a bond," says the court, "issued in discharge of a judgment is placed upon the market, a purchaser who has no intimation of anything affecting its validity, has a right to presume that the board of supervisors have been mindful of their interest and their duty, and that all available defences have been presented and passed upon." This case was recognized and cited with approval in *Miller* v. *Nelson,* 64 Iowa, 468, and *S. C. & St. P. R. R. Co.* v. *Osceola County,* 52 Iowa, 26. See also *Chaffee Co.* v. *Potter, ante,* 355, and cases there cited; *Powell* v. *Madison,* 107 Indiana, 106.

Had the proceeds of these bonds been properly applied, no question could have arisen as to the indebtedness of the township having been increased by their issue. If the district township had the right to issue the bonds, which it certainly had, if the statute under which they were issued be constitutional, the purchaser of such bonds was under no obligation to see that the money he paid for them was applied to extinguishing the existing indebtedness. He was entitled to act upon the presumption that the officers charged with the execution of the law would not betray their trust, and would deal fairly with the people who had put them forward to represent them. In my view this is simply an attempt to saddle the holders of these bonds with the derelictions of the officials chosen by the electors of this township to act for them in this transaction, and who were alone entitled to receive the money.